## John V. Hess *et al.*

## *v.*

## Arno Voss *et al.*

1. Jurisdiction in chancery—*in partition.* Equity has jurisdiction in case of partition. Nor does the fact, that a concurrent remedy exists at the common law, under the writ of partition, or under our statute, in the least affect such jurisdiction.

2. Guardian ad litem—*how to be designated.* An order appointing "the clerk of the court" guardian *ad litem,* is sufficient, without designating him by his name

3. Same—*who may prepare his answer.* In a chancery proceeding for partition of lands, where there are minor defendants, the fact that the answer of the guardian *ad litem,* the same admitting nothing and waiving nothing, but leaving complainants to prove their bill, was drafted by complainants' solicitor, can be of no avail in a proceeding to reverse the decree granting the partition.

4. MASTER IN CHANCERY—*necessity of an order of reference.* It is not essential to the authority of a master to take proofs in a case, that there should be a formal order of reference entered of record. The decree of the court being based upon the master's report, and confirming the same, will be regarded as record evidence that the reference was properly made, even in the absence of a formal order to that effect.

5. SAME—*whether a decree was rendered before the master's report was made.* It appeared that the testimony of a witness, embraced in a master's report, was represented by the report to have been sworn to the day after the hearing of the same. The record failed to show any date of the filing of the report, nor did the report itself bear any date. But, upon it being objected that the report had not been made when it was confirmed by the decree, it was *held,* it would be presumed the report was made before the court took action upon it. Moreover, the decree referred to the report in such a way as to leave no other inference to be drawn.

6. INFANT DEFENDANTS—*in chancery—whether the decree must give them a day in court.* The practice in courts of chancery does not require that a day in court shall be specifically given in the decree, to an infant defendant; and it is not error that the decree fails to expressly reserve his rights, as whether or not a day in court is given a minor, he may file a bill to impeach a decree procured by fraud, or for error appearing on its face, and is not driven to a bill of review or a rehearing.

7. PARTITION—*proof of notice of sale—whether it must appear of record.* It has been held, in a proceeding for partition under the statute, where there was an order of sale, the commissioner appointed to execute the decree must file a copy of the notice of the sale, with an affidavit that it was posted, or if printed, a copy with a certificate of the publisher.

8. But where the partition was sought in chancery, and there was a decree of sale, the master who executed the decree reported that he had given the required notice, and furnished a copy with his report, and it was held not to be essential, as the proceeding was in chancery, that the record should show the notice with an affidavit or publisher's certificate.

9. PURCHASER—*of an attorney as a purchaser.* There is no rule of law which prohibits an attorney in a cause from becoming a purchaser at the master's sale under the decree therein, even of land belonging to his client; though in such case his conduct will be closely scrutinized, and if he has not acted with strict fairness the purchase will be held to have been made for his client.

APPEAL from the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

The opinion of the court contains a sufficient statement of the case.

Mr. A. E. Wolcott, for the appellants.

Messrs. Moore & Caulfield, for the appellees, Voss and Ostlangenberg, and Messrs. Runyon & Avery, for the apellee, Peter Munn.

Mr. Justice Walker delivered the opinion of the Court:

It appears from this record, that in April, 1851, Frederick Vogt and Christiana, his wife, filed their bill in equity against John V., John C. and Martha Hess, minors, setting forth that petitioners were of lawful age, and that Christiana had a legal title to and was seized in fee of one undivided fourth part of lot 145, with its improvements, in Butterfield's addition to Chicago. That Christiana Vogt, John V., John C. and Martha Hess were seized in fee as coparceners, of the lot, and prayed a partition of the same. The clerk of the court was appointed guardian *ad litem* for the minor defendants. He answered for them, and submitted their rights to the protection of the court.

On the twenty-ninth of May, 1851, the master in chancery reported, the case having been referred to him to take and report the evidence, which he embodied in his report, and from which it appears that the allegations of the petition were proved, and the evidence shows that the property was not susceptible of division and was worth about $200, at that time, and the master reported that it could not be divided, and recommended a sale. The report was approved and a hearing had, and a decree rendered finding that the parties were the owners as set forth in the bill, and the property was ordered to be sold in the manner therein specified, and the proceeds of the sale were ordered to be distributed among the parties.

The master subsequently reported that he sold the premises for $185, to Arno Voss, partly for cash and partly on time, in installments.   That he had made a deed to the property and had made a distribution of the portion received, in the mode pointed out by the decree.   The report was approved, and the cause stricken from the docket.

The bill in this case was filed, reciting the former proceedings, and admits the general allegations of the former bill to be true, but alleges that the other coparceners aided Christiana in paying their mother's funeral expenses, and her debts; that Christiana and her husband had occupied the property from February until in October, of 1851; that since that time, Voss has been in the occupancy of the property by his tenants, and received the rents and profits; that Christiana died in August, 1852, leaving a child, the only issue of the marriage, which also died a few days later, leaving its father only heir to its mother's property; that he had released his interest in the property to complainants; that Voss has incumbered the property by mortgages to different persons; that the property when sold was worth $800, and the rental value since has been from $50 to $100, a year; that there was no just reason for selling the premises, but the same could readily have been partitioned among the owners; that Voss, who purchased the premises at the master's sale, was the solicitor who conducted the proceedings for the partition and sale; that persons were deterred from entering into competition for the property, owing to an apprehension that the sale was illegal, and that Voss was offered $400, the day after the purchase, for the property, if he would warrant the title, but he declined.

The bill charges that Voss fraudulently procured the decree and sale, and so became the purchaser for less than one-fourth of its value; that the decree is erroneous and should be reversed and set aside; and they assign for errors, that by the bill it appeared that the relief was adequate at law, and they should have been left to pursue their statutory remedy, and equity should not have taken jurisdiction; that no certain

476       HESS *et al. v.* VOSS *et al.*       [Sept. T.,

Opinion of the Court.

person was appointed guardian *ad litem* for the defendants; that he was named simply as "The Clerk of the court;" that no answer was filed by defendants or their guardian *ad litem;* that the master in chancery was not authorized to take testimony in the case; that his report was approved by the court before it was in fact made and filed; that the decree of the court does not give the minors a day in court, and in decreeing the costs to be equally apportioned among the parties, and in ordering the master to pay Vogt $24, by him expended on the lot; that Mannier, the master who succeeded Skinner, sold the lot; that the court approved Mannier's report.

The bill prays that the former decree be reversed, and complainants be relieved in the premises according to equity and good conscience; that the deeds and incumbrances given on the property, be, as to complainants and the premises, declared void, given up and canceled, and the land released therefrom; and for an account of the rents and profits, and for other and further relief.

Arno Voss and Ida Miller filed a demurrer to the bill, which was overruled, and Voss thereupon filed an answer, to which a replication was filed. Ostlangenberg filed an answer and a cross bill setting up his mortgage on the premises for $1110, with interest, and that Muno, Phillips, and C. W. T. Miller also claim to hold mortgages on the premises; Muno and complainants answered the cross bill, and replications were filed. A hearing was had on the bill and answer, the cross bill, answers thereto, and replications, exhibits and proofs, when the court below dismissed the original bill, also the cross bill, without prejudice. The complainants have appealed, and brought the record to this court, and assigned for error, that the court refused to reverse the former decree and proceedings in the partition suit, and in dismissing the bill in this case.

The law is firmly established that equity has jurisdiction in cases of partition. It has been recognized and acted upon in courts of chancery from an early period in the jurisprudence of that tribunal. Nor does the fact that a concurrent

remedy existed at the common law, under the writ of partition or under our statute, in the least affect such jurisdiction. It is but like other cases of concurrent jurisdiction between the courts, where litigants have a choice of the forum in which they will proceed. Because a partition could have been had under the statute in this case, it does not follow that equity was deprived of its jurisdiction.

The fact that the court below in the original case appointed " the clerk of the court " guardian *ad litem*, without naming him, was sufficient. The court knew who occupied that office, and when he filed the answer signed by his individual name, the court knew that the answer was made by the person intended by the order. This objection is untenable, and we are unable to see that there could have possibly resulted the slightest injury to the minors by the omission of his name in the order appointing him. He was as certainly known by the designation employed as if his name had been inserted. It therefore follows, that there was an answer filed for the minor defendants, and by their regularly appointed guardian *ad litem*. Nor did it matter in the least that the answer was drafted by complainants' solicitor, as it left them to prove their bill. It admitted nothing and waived nothing.

While it might be, and no doubt is, more strictly according to the practice of the court, that an order of reference to the master should be made, still it is not necessarily a fatal error when a formal order fails to appear in the record. While each order made by the court should appear, it is not indispensable that it should be entered up in form. It may appear in recitals or by reference in other portions of the record. *Tibbs* v. *Allen*, 27 Ill. 119. In this case the master reports that the case was referred to him, and the court in the final decree confirmed the report, and refers to the evidence it contained and based the decree upon this report.

This we regard as record evidence that the case was properly referred to him to hear and report the evidence. Had no reference been made to his report by the subsequent action

478      Hess *et al. v.* Voss *et al.*      [Sept. T.,

Opinion of the Court.

of the court, then a very different question would have been presented. It is, from the decree, perfectly apparent that he had been duly authorized to hear and report the evidence. The order no doubt was never spread upon the record and has been lost. The court would not have approved the report if it had been without authority.

Another error assigned on the decree is, that the master's report was not made when it was confirmed by the final decree. It appears that the hearing was had on the twenty-eighth day of May, and one of the witnesses whose deposition was reported, was sworn to it on the next day. We have looked into the record, but fail to find any date of the filing of the master's report, nor is it even dated. We must therefore conclude that the report was on file and before the court on the hearing. In fact, the decree refers to it in such a manner that no other inference can be indulged. After making the report, we presume that it may have been supposed that it was necessary that the jurat should be attached, or it may be that the clerk has entered the decree under a prior and wrong date. The court omitted to sign and date the decree, which is a practice that is highly desirable, as it frequently relieves from much uncertainty and frequently prevents unnecessary expense. But we find, from the decree, such direct reference to this report, that we can not but believe it was before the court, and if so it was acted upon, and it was not material what date it might bear. The court had accomplished the object of the reference by obtaining evidence upon which to act, and had procured it in the regular course and in proper form.

The decree rendered by the court was warranted by the master's report. Nor does the practice require that the infant defendants shall have a day in court given specifically in the decree. This was not error, as this court has repeatedly held that whether the decree gives a day in court or not, a minor may file a bill to impeach a decree procured by fraud, or for error appearing upon the face of the decree. *Kuchenbeiser v. Beckert,* 41 Ill. 172; *Loyd v. Malone,* 23 Ill. 43. In this latter case

the authorities are reviewed, and it is held that an infant may file such a bill to impeach a decree for fraud or error apparent on the decree, and is not driven to a bill of review or a rehearing. We perceive no reason for overruling or modifying the rule there announced. When other rights have attached since the rendition of the decree sought to be impeached, it might be that such rights would be protected precisely as they would under a reversal on error.

It is urged that the court erred in approving the sale made by the master, for want of proof of proper notice of the sale. In this case the master reported that he had given the required notice, and furnished a copy with his report, which appears to conform to the decree. In *Tibbs* v. *Allen*, 29 Ill. 535, it was said that the commissioners should have filed a copy of the notice, with an affidavit that it was posted, or if printed, a copy, with a certificate of the publisher. That case, it will be remembered, was a proceeding under the statute, and the decree was executed by the commissioners appointed by the court, while in this case the proceeding was in chancery, and the decree was executed by the master, one of the officers of the court, and no reason is perceived why a different rule should govern in this, than ordinary cases in chancery. A decree would not ordinarily be reversed because the record did not show the notice, with an affidavit or publisher's certificate. We do not therefore think this was an error requiring a reversal.

It is urged that the court erred in decreeing that out of the proceeds Vogt be paid $24, for money expended on the land. The decree states that this was proved before and reported by the master. Upon examining his report we find that it was proved that his wife had paid $20 on the purchase, after her mother's death, and this must be the sum referred to in the decree. It is true, the two amounts do not exactly correspond, but as this is an original bill, we do not feel that the rules of equity require that we should reverse the decree for so slight an error, when it may be that a considerable portion of the four

dollars allowed was for interest; but if not, the amount is too small to require a reversal.

We have been considering the case simply on the record of the original proceeding. But when we come to examine the evidence in the case, we find that Vogt placed improvements on the premises, which would exceed the four dollars erroneously decreed to him, even had he been charged with rents. When a minor files a bill to impeach a decree for fraud, it must be sustained by satisfactory evidence; it must clearly appear that wrong and injustice has been done; that fraud has entered into and produced the result. In this case it appears that the lot was remote from the settled portions of the city; that such property was used for gardening purposes, and that it was of little value. Smith, who appears to have been well informed, testified before the master, that it was not worth more than two hundred dollars; others place its value at as high as six hundred. But after the lapse of fifteen or twenty years it is exceedingly difficult to ascertain the value of the property at the time, especially in a city of the unprecedented growth of Chicago.

None of these witnesses speak of the sale of property similarly situated; and the fact that it brought but $185, one-fourth in hand, and the balance in equal payments, in six, nine and twelve months, is a strong circumstance to rebut the inference of a sacrifice; and the evidence seems to show that the master was in no haste to strike it off, as he waited a considerable time for an advance on the last bid, and this too, in the presence of a number of persons who had attended the sale. It is true, Vogt, at the first sale, bid the property off at $300, but gave it up because he was unable to meet the payments, as he swears. If this property was worth six hundred, or even four hundred dollars, it would seem that he would have found no difficulty in finding some one who would have paid him something for his bargain. Again, we find no one who was willing to have paid more or desired to purchase, even if doubts whether the title would be good had not prevailed;

while the property was no doubt low, still we can not say that it was sacrificed.

There is no rule of law which prohibits an attorney from becoming a purchaser at a master's sale, even of land owned by his client, but in such cases the attorney must act in good faith. On such a purchase the conduct of the attorney will be closely scrutinized, and if he has not acted with strict fairness his purchase will be held to have been made for his client. In this case Voss became the purchaser. He swears the sale had commenced when he arrived at the place of sale, and there had then been bid but $150; that he thereupon bid $185, simply to prevent it from being sacrificed, but no one advanced on his bid, although at his request the offering was continued for a considerable time. There is no evidence in the record that contradicts or impeaches this evidence, and we must, unimpeached, regard it as true. We, from this, or from all of the evidence in the case, can see no fraud ; that, in view of the great rise in this kind of property, it may be a misfortune of the minors that their property was sold, but the misfortune arises from want of foresight, common to the great mass of men, who could not have seen the future growth of the city. But that is no reason for affording the relief sought. After a careful examination of this record we fail to find any such error as requires us to reverse the decree of the court below, and it must be affirmed.

*Decree affirmed.*