SALLIE E. HERR *et al.*

*v.*

LEWIS E. PAYSON *et al.*

*Filed at Ottawa June 15, 1895—Rehearing denied October 25, 1895.*

1. ATTORNEYS AT LAW—*relation of trust does not extend to matters not covered by employment.* A retainer to defend an action brought against a client by his wife for separate maintenance does not create such a relation of trust as will preclude the attorney from purchasing property owned by the client, at a public sale under a deed of trust with which he had no connection as attorney.

2. SAME—*may purchase client's property openly and fairly.* The purchase by an attorney, at a sale under a deed of trust, of property of his client, who has employed him to secure a loan to protect the property from sale, is valid against the latter if open, fair and honest.

3. LACHES—*may defeat claims under constructive trust.* The Statute of Limitations or *laches* may be relied upon to defeat rights claimed under a constructive trust.

4. SAME—*failure to set aside deed for fourteen years bars action.* Failure by a client for over fourteen years to proceed to set aside an alleged voidable sale of his property under a deed of trust to his attorney is a complete bar to an action for that purpose by his representatives after his death, in the absence of disability.

5. SAME—*mere weakness of mind does not excuse laches.* While insanity excuses delay in bringing action, mere weakness of mind consequent upon a physical disease, not such as to render the person unable to transact business, does not excuse a delay of fourteen years in moving to set aside a voidable sale of land.

BAKER, J., dissenting.

WRIT OF ERROR to the Circuit Court of Livingston county; the Hon. EDWARD P. VAIL, Judge, presiding.

WILLIAMS & CAPEN, and E. M. PRINCE, for plaintiffs in error:

Whenever one person is placed in such relations to another, by the act or consent of that other, or the act of a third person, or of the law, that he becomes interested for or with him in any subject of property or business, he is prohibited from acquiring rights in that subject antagonistic to the person with whose interests he has become associated. *Davis* v. *Hamlin,* 108 Ill. 39; *Jennings* v. *McConnell,* 17 id. 148; *Conant* v. *Riseborough,* 139 id. 383; *Morrison* v. *Smith,* 130 id. 304; *Dennis* v. *McCagg,* 32 id. 429; *Tyler* v. *Sanborn,* 128 id. 136; *Thorp* v. *McCullum,* 1 Gilm. 614; *Moore* v. *Bracken,* 27 Ill. 23; *King* v. *Cushman,* 41 id. 31; *Moore* v. *Pickett,* 62 id. 158; *Stewart* v. *Duffy,* 116 id. 47; *Allen* v. *Jackson,* 122 id. 567; *Zeigler* v. *Hughes,* 55 id. 288; *Galbreath* v. *Elder,* 8 Watts, 81; *Ex parte Hughes,* 6 Ves. 617; *Cumberland C. Co.* v. *Sherman,* 30 Barb. 553; *Van Epps* v. *Van Epps,* 9 Paige, 237; *Eoff* v. *Irvine,* 108 Mo. 378; *Keech* v. *Sandford,* 1 Ld. Cases in Eq. 44; *Ex parte James,* 8 Ves. 337; *Parkist* v. *Alexander,* 1 Johns. Ch. 394; *Davoue* v. *Fanning,* 2 id. 251; *Pearce* v. *Gamble,* 72 Ala. 341; *Hager's Exrs.* 15 S. & R. 65; *Ferrill* v. *Bank,* 10 H. L. Cas. 26; *Wright* v. *Walker,* 30 Ark. 44; *Morris* v. *Joseph,* 1 W. Va. 256; *Collins* v. *Raney,* 42 Ark. 531; *Wade* v. *Pettibone,* 11 Ohio, 57; *Rogers* v. *Marshall,* 3 McCrary, 76; *Ex parte Bennett,* 10 Ves. 281; *Randall* v. *Errington,* id. 423; *Gibbs* v. *Daniel,* 4 Giff. 1; Bispham's Eq. sec. 93; Pomeroy's Eq. Jur. secs. 1088, 1097; Perry on Trusts, secs. 197, 202, 203, 206.

If an attorney purchases property which is involved in litigation in which he is employed, he holds it in trust for his client. *Wheeler* v. *Willard,* 44 Vt. 640; *Case* v. *Carrol,* 35 N. Y. 385; *Smith* v. *Brotherline,* 62 Pa. St. 461; *Henry* v. *Reimer,* 25 id. 354; *Ex parte James,* 8 Ves. 337; *Staats* v. *Bergen,* 2 C. E. Green, 297.

It makes no difference that the purchase was made at a public sale. *Davoue* v. *Fanning,* 2 Johns. Ch. 251; *Saltmarsh* v. *Beene,* 4 Port. 283; *Campbell* v. *Walker,* 5 Ves. 678; *Staats* v. *Bergen,* 2 C. E. Green, 297.

The sale should be set aside even though Payson's intentions were honest and there was no fraud in fact, and he had paid the full value of the property. Perry on Trusts, secs. 197, 202; 2 Pomeroy's Eq. Jur. sec. 959; *Pensonneau* v. *Blakely,* 14 Ill. 15; *Borders* v. *Murphy,* 125 id. 577; *Lagger* v. *Insurance Co.* 146 id. 283; *Wright* v. *Walker,* 30 Ark. 44; *Ex parte Bennett,* 10 Ves. 381; *Randall* v. *Errington,* id. 423; *Davoue* v. *Fanning,* 2 Johns. Ch. 251; *People* v. *Township,* 11 Mich. 222; *Ex parte James,* 8 Ves. 337.

Even though Payson's employment had ceased before the sale took place, he still held his title in trust for Benj. Herr, Jr. *Briggs* v. *Hodgdon,* 78 Me. 514; *Henry* v. *Reimer,* 25 Pa. St. 354; *Eoff* v. *Irvine,* 108 Mo. 378.

If the property has passed to an innocent purchaser for value, the *cestui que trust* may require an accounting for value. *Higgins* v. *Curtis,* 82 Ill. 28.

Benj. Herr, Jr., being *non compos mentis* at the time of the sale and from that time until his death, the limitation of action did not commence to run until his death. *Van Buskirk* v. *Van Buskirk,* 148 Ill. 9; *Dodge* v. *Cole,* 97 id. 338; *Hemphill* v. *Holford,* 88 Mich. 293.

In no case where there is fraud will laches for any period short of the period fixed by the Statute of Limitations be a bar to the right to recover. *Gibbons* v. *Hoag,* 95 Ill. 45; *Elmore* v. *Johnson,* 143 id. 513; *Butler* v. *Haskell,* 4 Dess. 651; *Harris* v. *McIntyre,* 118 Ill. 275; *Stiger* v. *Bent,* 111 id. 328; *Greenman* v. *Greenman,* 107 id. 404.

N. J. PILLSBURY, and C. C. STRAWN, for defendants in error:

The impairment of the faculties or mental weakness of a person, even to a considerable degree, is not sufficient to avoid his contracts if he have sufficient understand-

ing to know what he is doing and to comprehend the effect and consequences of his acts. *English* v. *Porter*, 109 Ill. 285; *Kimball* v. *Cuddy*, 117 id. 213; *Burt* v. *Quisenberry*, 132 id. 385; *Perry* v. *Pearson*, 135 id. 218; *Greene* v. *Greene*, 145 id. 264; *Pooler* v. *Cristman*, id. 405; *Guild* v. *Hall*, 127 id. 534; *Francis* v. *Wilkinson*, 147 id. 370; *Argo* v. *Coffin*, 142 id. 368.

Such feebleness of mind does not make a person *non compos mentis*, within the meaning of that term. *Delafield* v. *Parish*, 25 N. Y. 9; *In re Kiedaisch's Will*, 3 N. Y. Sup. 258; *Jackson* v. *King*, 4 Caro. 207; *Rugan* v. *Sabin*, 53 Fed. Rep. 415; *Stewart's Exrs.* v. *Lispenard*, 26 Wend. 255.

Contracts between attorney and client, if fair, are as valid as though they were strangers. And even if affected by fraud, oppression or undue influence, such contracts are not absolutely void, but, at most, are only voidable. *Morrison* v. *Smith*, 130 Ill. 304; *Elmore* v. *Johnson*, 143 id. 513; *Laclede Bank* v. *Keeler*, 109 id. 385; 149 id. 436.

The relief sought by the bill is barred by *laches*. *Cox* v. *Montgomery*, 36 Ill. 396; *Winchell* v. *Edwards*, 57 id. 41; *Noyes* v. *True*, 23 id. 503; *Prather* v. *Hill*, 36 id. 405; *Fergus* v. *Woodworth*, 44 id. 379; *McHany* v. *Schenk*, 88 id. 357; *Jackson* v. *Spink*, 59 id. 404; *Rigney* v. *Small*, 60 id. 416; *Castner* v. *Walrod*, 83 id. 176; *Bates* v. *Gillett*, 132 id. 287.

Unreasonable delay of a client to assert his rights after full knowledge of the facts to set aside a sale to his attorney, even if he once had the right to rescind, will bar his equities. *Ulrich* v. *Muhlke*, 61 Ill. 513; *Morrison* v. *Smith*, 130 id. 304; *Laclede Bank* v. *Keeler*, 109 id. 385; *Rugan* v. *Sabin*, 53 Fed. Rep. 415; *Elmore* v. *Johnson*, 143 Ill. 513.

The statute of limitations of seven years is a bar to the relief prayed in the bill as it would be a bar at law. See cases *supra*, and *McCormick* v. *Street*, 17 Ill. 253; *Grant* v. *Badger*, 128 id. 386; *Brooks* v. *Bruyn*, 24 id. 372; *Bolden* v. *Sherman*, 110 id. 418; *Hancock* v. *Harper*, 86 id. 445; *Hol-*

*brook* v. *Gouveneur,* 114 id. 623 ; *Carpenter* v. *Carpenter,* 70 id. 457; *Quayle* v. *Guild,* 91 id. 378 ; *Sloan* v. *Graham,* 85 id. 26.

When the statute begins to run it is not arrested by subsequent disability. So the death of the party debtor will not stop its running. *Bonney* v. *Stoughton,* 122 Ill. 536; *Keil* v. *Healey,* 84 id. 104; *Piper* v. *Hoord,* 107 N. Y. 67; *Fritz* v. *Joiner,* 54 Ill. 101; *DeKay* v. *Darrah,* 2 Green, (N. J. L.) 280 ; *McDonald* v. *Hovey,* 110 U. S. 619.

Voidable contracts and acts can be ratified, and long acquiescence without notice to opposite party will imply ratification. *Munn* v. *Burges,* 70 Ill. 604; *Sloan* v. *Graham,* 85 id. 26 ; *Hamilton* v. *Lubukee,* 51 id. 415.

There is no rule of law that prohibits an attorney, an agent or a trustee from dealing with his client, principal or *cestui que trust,* or buying his property. *Hess* v. *Voss,* 52 Ill. 472 ; *Morrison* v. *Smith,* 130 id. 304; *Elmore* v. *Johnson,* 143 id. 513 ; *Ulrich* v. *Muhlke,* 61 id. 499; *Laclede Bank* v. *Keeler,* 109 id. 385.


Mr. CHIEF JUSTICE CRAIG delivered the opinion of the court :

This was a bill in equity, brought by Sallie E. Herr and Benjamin Herr, widow and only child of Benjamin Herr, Jr., deceased, against Lewis E. Payson and Andrew J. McGinness, to set aside a sale of the north half of section 36, township 27, north, range 4, east of the third principal meridian, in Livingston county. The sale was made under a deed of trust executed December 7, 1872, by Benjamin Herr, Jr., and wife, Sallie E. Herr, to secure a loan of $6000 obtained of Thomas J. Bunn, due in five years, with ten per cent interest, payable semi-annually. In default of payment the property was sold at public vendue, under a power of sale contained in the deed of trust, on March 29, 1878, to Lewis E. Payson for $6308, the amount due on the deed of trust. Upon making the purchase Payson entered into the possession of the land, and continued in the possession, paying all taxes, until

March 28, 1890, when he sold to Andrew J McGinness, who has occupied the land and paid all taxes since that time. Benjamin Herr, Jr., died intestate July 22, 1893.

It is, in substance, charged in the bill, that Payson, who was an attorney at law residing in Livingston county, was employed to take charge of the affairs of Benj. Herr, Jr., in Illinois; that he agreed to procure a loan and protect the land against the Bunn mortgage; that he made no effort to procure a loan to pay off the debt, but, with the intent to cheat and defraud the said Herr, Jr., out of the land, induced Bunn to sell the land under the mortgage in order that he might procure the title himself; that the lands were sold under the Bunn mortgage, and purchased by Payson for much less than their value, while he was acting as attorney for Herr, Jr.; that the sale was fraudulent and void as against Herr, Jr., and the complainants, who are his heirs-at-law.

It appears that Benj. Herr, Jr., purchased the land in controversy, improved it, and occupied it as a residence. In 1872 he had a severe attack of sickness. After he had somewhat recovered, his wife took him to Hot Springs, Arkansas. While at Hot Springs he gave his father-in-law, W. G. Miller, a power of attorney to transact his business. Miller continued to act as attorney for Herr until the fall of 1875, when Benj. Herr, Sr., the father of Herr, Jr., came out from Pennsylvania, and being dissatisfied with the manner in which Miller had transacted the business, and being interested on account of moneys he had advanced his son, and the son also being dissatisfied, Miller's power of attorney was revoked and a power of attorney given to Herr, Sr., to transact and manage the business of the son. The father returned to Pennsylvania, taking his son with him, where the son remained until his death, in 1893. In May, 1877, the wife of Herr, Jr., brought an action in this State against him for support, and by letter of August 6, 1877, Payson was employed by Herr, Jr., to defend the action. In the fall

of that year Herr, Sr., came to Illinois to look after business of his own as well as the business of his son. The Bunn loan became due that fall, and up to the time Herr, Sr., came to this State the parties had failed to make an arrangement extending the time of payment. Payson was then a loan agent at Pontiac, representing Baldwin & Co. of New York. Herr, Sr., applied to Payson for a loan to pay off the Bunn mortgage, and Payson agreed to aid Herr in procuring the money. Payson made an effort to procure the money from Baldwin, but he required principal and interest payable in gold, and Herr would not consent to those terms, so no money was procured of Baldwin. Culver, of Pontiac, a loan agent, was applied to. He succeeded in making an arrangement for the money in January, 1878, with one Robinson, of Peoria, but Miller, the former attorney of Herr, Jr., informed Culver and Robinson that Mrs. Herr refused to sign a mortgage, and upon learning this fact Robinson refused to make the loan. Payson made an effort to get the loan renewed by Bunn, but in this he failed. Finally, on the 6th day of March, 1878, Payson received a power of attorney from Herr, Jr., given to C. Rohrer, of Canton, Ill., authorizing him to act as the attorney. This was placed in Rohrer's hands, and he made a number of applications for money, but failed. He also saw Bunn and made an effort to procure a renewal, but failed in that. In February, 1878, the Herrs were informed that the efforts to obtain a loan had failed, and Payson made the suggestion to Herr, Sr., that he might purchase the land. In reply to this communication Herr, Sr., wrote Payson: "I have not got the means to buy, as you propose in your last, so if you cannot make the loan from another party I will have to let it go. * * * How long will they advertise before selling?" In reply to this, Payson wrote on March 4, 1878, as follows: "I regret exceedingly that the loan fell through, but I see no way of avoiding the difficulty. The advertisement runs thirty days   I sent

you a paper this week. Mr. Robinson, of Peoria, the man from whom we were to get the loan, was here, and learning that Mrs. Herr declined to execute new papers, and of the litigation, went home, and so that ended it with him." Three days before the sale Payson telegraphed to Rohrer: "I will bid the amount of mortgage for myself. If it goes above you will get excess. Answer, if satisfactory. Letter by mail." Rohrer replied on March 26, as follows: "In reply to yours, I would say that I suppose you have just as good a right to bid as any other person. I hope you will bid a liberal price for it. I don't think the mortgage is half price for the land. We are at the mercy of you moneyed men. I would like to save a little of his property if I could. If the land should bring a fair price I could save the balance." In addition to the trustee, Bunn, Miller, Culver, Rohrer, Payson, and a few others, attended the sale. Payson was the highest bidder, and the land was struck off to him, as heretofore stated. A man named Haines intended to attend the sale, but missed a train and failed to reach Pontiac. He, however, telegraphed a bid of $8000 for the land, but the telegram was not received until after the sale. Rohrer, having learned of the offer of Haines, called on Payson and offered him $100 for his bid, but the offer was declined.

Under the facts as they appear in the record, it is insisted by counsel for appellants that Payson occupied such relations to the property in question and its owners, and those having the management of it, as prohibited him from acquiring any rights or interest in it antagonistic to the interest of Benj. Herr, Jr., and consequently any interest he did acquire in the property by the sale he held in trust for Herr. As has been seen, Payson was employed by Herr, Jr., to defend an action brought by his wife for separate maintenance; but this retainer created no such relation of trust and confidence as would preclude Payson from purchasing property owned by Herr, Jr., at public sale, which might be exposed to sale

under a judgment or decree, or under a power of sale in a mortgage with which he had no connection as attorney for Herr.

But it is said, Payson was employed as an attorney by Herr, Jr., to procure a loan to pay off the Bunn mortgage, and that this employment precluded him from becoming a purchaser at the sale under the Bunn mortgage. The law does not prohibit an attorney, an agent or a trustee from dealing with his client, principal, *cestui que trust*, or buying his property. (*Hess* v. *Voss*, 52 Ill. 472; *Morrison* v. *Smith*, 130 id. 304; *Elmore* v. *Johnson*, 143 id. 513; *Laclede Bank* v. *Keeler*, 109 id. 385; *Ulrich* v. *Muhlke*, 61 id. 499.) Such contracts, if open, fair and honest, when deliberately made, are as valid as contracts made between other parties.

In *Hess* v. *Voss*, *supra*, where an attorney who obtained a decree of sale in a proceeding for partition became the purchaser of the premises at the master's sale, it was held that there is no rule of law which prohibits an attorney in a cause from becoming a purchaser at the master's sale, under a decree, of land belonging to his client, where the attorney has acted with fairness and honesty.

*Ulrich* v. *Muhlke*, *supra*, is a case which involved the fiduciary relation of principal and agent, a large amount of property having been conveyed by a principal to a confidential agent. In speaking in regard to the validity of the deed, the court, among other things, said (p. 510): "We are called upon by complainant to say that the deed is null and void by reason of the relation then existing between the grantor and grantee, the latter being the confidential agent of the grantor. We have examined the rule of equity invoked by the complainant as applicable to such cases, and no commentator on the principles of equity, and no reported case, goes to the extent of saying that by force of such relation a deed is *ipso facto* void. * * * To render such a transaction valid

it is only necessary to show that the other party had competent and disinterested advice, or that he performed the act or entered into the transaction voluntarily, deliberately and advisedly, knowing its nature and effect, and that his consent was not obtained by reason of the power and influence to which the relation might be supposed to give rise." Kerr on Fraud, p. 104, and note 1.

*Laclede Bank* v. *Keeler, supra,* is a case where the validity of a conveyance of property from a client to attorney arose, and in the discussion of the question it is said (p. 391): "A sale of property from a client to an attorney will be sustained where the transaction is open, honest and fair, and no undue influence is used. Under the proposition submitted to the court to be held as law, if the relation of attorney and client existed when the deed was made no title passed, although the attorney concealed nothing, made no misrepresentations, and although the transaction may have been in every respect fair and honest. Such is not the law, and it would have been error if the court had given the proposition." In *Morrison* v. *Smith* and *Elmore* v. *Johnson, supra,* the same principle is announced.

It nowhere appears that Payson concealed, or attempted to conceal, any fact in relation to what was done to procure a loan, or in regard to the acts or proceedings which transpired before the sale. Both Herr, Jr., and his father were fully advised of the steps taken by Payson, and also all that was done by Bunn in reference to a sale under his mortgage. The acts and doings of Payson were open and public. Moreover, Rohrer, who was specially empowered by Herr, Jr., some four or five weeks before the sale, to raise money and pay off the Bunn mortgage, was expressly notified by Payson, several days before the sale, that he intended to bid on his own account on the lands at the sale, so that it was known by the most trusted agent, an attorney of Herr, Jr., before the sale

took place, what attitude Payson would take in regard to the lands.

Under the facts as they appear in the record, we are inclined to the opinion that the relations existing between Payson and Benj. Herr, Jr., did not deprive Payson of the right to purchase the lands at the sale. But if we are not correct in this, and the facts may be regarded as sufficient to create a trust, it was only a constructive trust, or a trust which arose by operation of law. The Statute of Limitations or *laches* may be relied upon to defeat rights claimed under a constructive trust. (*Quayle* v. *Guild*, 91 Ill. 378.) Here, upon making the purchase, Payson went into the immediate possession of the lands as owner, and he and his grantee have remained in the possession, making valuable improvements, ever since. Herr, Jr., brought no action to set aside the sale during his life, although he lived for over fifteen years after the sale, and was fully informed in regard to all the facts relating to the sale. If it be conceded that the sale was voidable, and might have been set aside had a bill been brought at once for that purpose, the long delay,— the *laches* of Herr, Jr., and his legal representatives,— is a complete bar to the relief claimed in the bill. *Winchell* v. *Edwards*, 57 Ill. 41; *Noyes* v. *True*, 23 id. 503; *Prather* v. *Hill*, 36 id. 402; *Fergus* v. *Woodworth*, 44 id. 374; *McHany* v. *Schenk*, 88 id. 357; *Jackson* v. *Spink*, 59 id. 404; *Rigney* v. *Small*, 60 id. 416; *Castner* v. *Walrod*, 83 id. 171; *Bates* v. *Gillette*, 132 id. 287; *Munn* v. *Burges,* 70 id. 604.

But it is claimed that Benj. Herr, Jr., was of unsound mind, and on that account he is not precluded by *laches.* Where sections 6 and 7 of chapter 83, entitled "Limitations," are relied upon to defeat an action of ejectment under section 8, the bar provided for cannot be invoked or made available where the owner of the adverse title is a minor or an insane person. The rule imposed by statute in an action of ejectment may, with propriety, be adopted where a bill has been filed to impeach a sale of lands and

*laches* is set up as a defense to the bill. If, therefore, Herr, Jr., was insane at the time the sale was made, and remained insane until his death, his *laches* could not be relied upon to defeat the action.

It appears, from the evidence, that Benj. Herr, Jr., was afflicted with syphilis; that the bones of his skull became softened and his whole system became impaired, and in 1873 he went to Hot Springs for treatment. On the advice of a physician he placed his business in the hands of others, in order that his mind might be relieved of all care, and thus aid in the restoration of his health. From 1873 to 1876 Miller, his father-in-law, attended to his business under a power of attorney. In January of that year Herr, Jr., became dissatisfied with the management of his business by Miller, and his father came out from Pennsylvania, and under a power of attorney he assumed the management of the business and took the son back to Pennsylvania, where he remained until he died, in 1893. Herr, Sr., acted until his death, in 1879, when Henry Rohrer, and C. S. Herr, a brother, acted for a while. It thus appears that from the time Herr, Jr., became sick, up to the time of his death, what business he had was transacted by an attorney duly authorized by him. The complainants took the depositions of a large number of witnesses residing in this State and in the State of Pennsylvania, who testified that in their opinion Herr, Jr., was not competent to transact ordinary business. These witnesses had done no business with him, nor had they seen him attempt to transact business, and whether he was actually capable of attending to any business, they, of course, could not determine. All the agents of Herr, Jr., from 1873 to the time of his death, acted under a regular power of attorney executed by him. His ability to execute a power of attorney was never called in question, nor was his capacity to act intelligently in a business matter disputed or challenged. In 1876, in a suit commenced by Mrs. Herr for support, a want of capacity was set up by

her, but when the proof came in she failed. A decree was rendered on a personal answer and trial, no conservator or guardian having been appointed. At a later date, on a bill for divorce by the wife, the mental condition of Herr, Jr., was regarded as having been established in the former suit, and on a personal answer and evidence taken a decree was rendered. In that bill the complainant, who is also one of the complainants in this case, in substance alleged, that from depositions taken in the separate maintenance case by defendant she is informed that her husband has much improved in health in Pennsylvania, and become sound in mind and body, and is capable of taking care of his property; that from said evidence she had learned that her husband had willfully absented himself, and therefore she charges desertion. Later she filed a bill in the circuit court of Livingston county to set aside two mortgages made by Herr, Jr., to Herr, Sr., on the ground of mental incapacity of Herr, Jr., to make them, and want of consideration. In this case full proofs were taken. Among the proofs is a deposition by Herr, Jr., taken in 1883, especially to show his condition then, as well as in 1875, when the first mortgage of $300 to Herr, Sr., was given, and in 1877, when the second one, for $1394.75, was given by Herr, Jr. This deposition fails to show any trace of insanity in Herr, Jr., but, on the other hand, so far as can be judged from the deposition, he, at the time it was taken, seemed to be in full possession of his mental powers. The deposition of Henry B. Gish, a brother-in-law, was taken in the same case, and he testified that he made the settlement between Herr, Sr., and Herr, Jr., for which the note and mortgage were given; that they were both satisfied. The witness also testified that Herr, Jr., in 1877, before and since, was competent to transact business and execute contracts. Cyrus S. Herr, a brother, also testified that Herr, Jr., in 1875 and 1876, was, and still is, competent to transact business.

In addition to this evidence, it appears from the evidence that Benj. Herr, Jr., was in the habit of keeping a copy of his letters, using Shipman's Duplicating Letter Book, and a record of his correspondence. The defendants procured a copy of his letters for each year from July, 1877, to 1891, and these letters were read in evidence. A reference to these letters, written to various parties in regard to Herr, Jr., and his family and affairs, not only shows that he was not insane, but he seemed to have a clear conception of his situation and his business. Indeed, it is difficult to perceive how any person can read these various letters, upon different subjects, without being convinced that he fully realized the nature and condition of his business. He may have been regarded as an imbecile, and his mind may have been weakened by the disease which was gradually undermining his constitution; but he was not insane, or in that condition of mind where he could be excused or relieved from responsibility from his acts. Mere weakness of mind, impairing only the capacity to properly transact business, in the absence of fraud, is not enough to avoid a deed or contract. (*Boyer* v. *Berryman*, 123 Ind. 451.)   Sickness, extreme distress or debility of body will not affect the capacity to make contracts or be bound by the acts, where sufficient intelligence remains to control the doing or the not doing of an act.   *Pooler* v. *Cristman*, 145 Ill. 405.

Some other questions have been referred to in the argument, which have been considered, but it will not be necessary to refer to them here.

After a careful consideration of the whole record we think the decree of the circuit court correct, and it will be affirmed.

*Decree affirmed.*

Mr. JUSTICE BAKER:   I do not concur either in the opinion or in the conclusion reached.