RAYMOND PAE, ALSO KNOWN AS KEALOHAKA-
LANI LIU *v.* RUTH LEHUA STEVENS, SAMUEL
STEVENS, ALSO KNOWN AS BOYD STEVENS,
AND KAM TAI LEE, TREASURER OF THE
TERRITORY OF HAWAII.

NO. 3025.

ARGUED JUNE 22, 1955.          DECIDED NOVEMBER 27, 1956.

TOWSE, C. J., STAINBACK AND RICE, JJ.
(TOWSE succeeded by RICE as C. J. at time of opinion.)

OPINION OF THE COURT BY STAINBACK, J.

This case was argued and submitted to the full court. The term of one of the justices, in the interim, having expired and he having left the bench, it was stipulated by all parties that the case be decided and opinion rendered by the two remaining justices.

Plaintiff filed suit in the court below against Ruth Lehua Stevens and Samuel Stevens alleging that they conspired to deprive plaintiff of his interest in certain lands in Honolulu. Also named as a defendant was the treasurer of the Territory; in his complaint plaintiff alleged that the treasurer should, by virtue of section 5099, Revised Laws of Hawaii 1935 (now section 12699, Revised Laws of Hawaii 1945), make payment to plaintiff for damages sustained by him for loss of his land because of the negligence of the land-court examiner in failing to discover that plaintiff was a minor and thus causing registration of plaintiff's title in the land court without notation upon the certificate of registration that plaintiff was a minor.

Stipulation as to the facts was made and the court rendered its decision finding for the defendant-treasurer; the appeal is from such part of the decision.

The stipulated facts, in substance, are as follows:

On February 12, 1920, plaintiff was born in Honolulu, the child of John Lui and Sarah Lui, and on May 13, 1920, he was baptized in Honolulu under the name of Raymond Louis.

In September 1926 plaintiff assumed the name of Raymond Pae and has been known by that name since that time. The surname was that of his uncle, John Naaeao Pae, by whom he was being reared.

Plaintiff graduated from the public schools of Honolulu and in 1940 he was married under the name of Joseph Lui, which was his brother's given name, as he felt his own

Hawaiian name of Kealohaokalani was too long and difficult.

On March 30, 1938, John Naaeao Pae died in Honolulu, leaving a will dated July 1, 1935 by which he bequeathed and devised all of his property to his two nephews, Joe Pae and Raymond Pae, equally and share and share alike. Included in the property so devised was a parcel of land on the northwest side of Emma street in the City and County of Honolulu, containing an area of 9,080 square feet. The will was duly admitted to probate and while probate was pending the defendant, Samuel Stevens, stated in the presence of plaintiff to Charles E. Cassidy, attorney for the estate of John Naaeao Pae, that plaintiff was an adult. Plaintiff remained silent. On December 5, 1938, the circuit judge at chambers of the first judicial circuit entered an order approving accounts, determining trust and distributing the estate of John Naaeao Pae. The order provided in part that:

"The persons entitled, as distributees, to have delivered to them all of the property belonging to said estate remaining in the hands of said Administrator, are as follows, to wit:

"JOSEPH PAE, also known as Joe Pae, Honolulu, Territory of Hawaii, adult and nephew of said deceased, and

"RAYMOND PAE, Honolulu, Territory of Hawaii, adult and nephew of said deceased."

On February 17, 1939, plaintiff and his brother Joseph Pae mortgaged the land in question to the Liberty Bank of Honolulu to secure a $2,500 loan, which mortgage was duly recorded in the bureau of conveyances of the Territory of Hawaii. On June 17, 1939, plaintiff and his brother Joseph executed a second mortgage to G. D. Crozier to secure loans up to $1,000 for costs and expenses in connection with the land-court registration of this parcel and

another parcel which is not involved in this action.

In September 1939 plaintiff and his brother Joseph executed a power of attorney to Ruth Lehua Stevens, the power of attorney being duly recorded in the bureau of conveyances of the Territory of Hawaii.

On October 9, 1939, plaintiff executed a third mortgage to the Honolulu Finance and Thrift Company, Limited, subject to the two prior mortgages, to secure a loan of $500, which mortgage was duly recorded in the bureau of conveyances.

On October 11, 1939, Jordan Freitas, Jacob F. Carreiro, and plaintiff and his brother, by Ruth Lehua Stevens, their attorney in fact, signed an agreement which provided, in substance, that Jordan Freitas had paid $1,700 to Jacob F. Carreiro in escrow to be released to plaintiff and his brother Joseph, or their authorized representative, in part payment for the premises in question, provided a land-court certificate of title issued to plaintiff and his brother indicating that they held a fee-simple title thereto and that a land-court deed sufficient to convey such title be delivered by plaintiff and his brother to Jordan Freitas, and further provided that if no such deed be delivered within ninety days then Joseph F. Carreiro was to return the $1,700 to Jordan Freitas.

On October 24, 1939, Ruth Lehua Stevens, acting with the knowledge and consent of the plaintiff and of his brother Joseph Pae, and under authority granted by power of attorney of September 1939 heretofore referred to, made a written application to the land court of the Territory of Hawaii for the registration of the title to this land. The abstract of title prepared by William L. Ewaliko, who was properly licensed to engage in the business of making abstracts and certificates of title, was filed with the land-court application. The abstract referred to the order approving accounts, determining trust and distrib-

uting estate as heretofore set forth, named and described the distributees as "Joseph Pae, also known as Joe Pae, adult and nephew of John Naaeao Pae, and Raymond Pae, adult and nephew of John Naaeao Pae, as tenants in common."

On October 24, 1939, the land-court application was duly referred to P. C. Morris, an examiner of titles. The examiner did not question plaintiff or examine the records of the bureau of vital statistics of the board of health in an effort to determine whether or not plaintiff was an adult. However, the name of Raymond Pae does not appear in the records of the bureau of vital statistics of the territorial department of health.

On January 17, 1940, the land court entered a decree registering the land in question, in which it described the registered owners as Joseph Pae, unmarried, and Raymond Pae, unmarried, giving their addresses and describing them as tenants in common in equal shares. The decree did not describe plaintiff as a minor. On the same date the land court, pursuant to said decree, issued original certificate of title.

On January 19, 1940, Ruth Lehua Stevens, acting by authority of the power of attorney heretofore referred to, deeded the land in dispute to Jordan Freitas and Carrie Freitas, husband and wife, for $5,750. Of this sum $3,785 was used to satisfy the Liberty Bank mortgage, the Crozier mortgage and the Honolulu Finance and Thrift Company mortgage. Plaintiff himself did not receive any of the $5,750 which Ruth Lehua Stevens converted to her own use.

On January 20 the deed was filed in the office of the registrar of the land court and on the same date a transfer certificate of title was issued to Jordan Freitas and Carrie Freitas.

On January 19, 1940, the date of the sale of the land

in dispute, the fair market value of the same was in the amount of $14,000.

The plaintiff did not know the purpose of the land-court application or the fact that the land was to be purchased by Jordan Freitas and Carrie Freitas.

On or about October 8, 1940, plaintiff first learned of the sale to Jordan Freitas and Carrie Freitas and on October 31, 1940, plaintiff rescinded all acts done pursuant to the power of attorney as to himself; however, plaintiff has not brought any action in any court for the purpose of canceling or rescinding, or attempting to cancel or rescind, the deed or transfer certificate of title to Jordan Freitas and Carrie Freitas.

Section 12699, Revised Laws of Hawaii 1945, provides, in substance, that any owner of registered land who, without negligence on his part, sustains loss or damage, or is deprived of land or of any estate or interest therein, after the original registration of his title by the registration of any person as owner of such land, through fraud, or in consequence of any error, omission, mistake or misdescription in any certificate of title or in any entry of memorandum in the registration book, may bring action for the recovery of compensation for such loss or damage. The statute further provides that the plaintiff must exhaust the right of action or other remedy that he may have to recover the land before he files suit against the treasurer.

It was claimed that the omission from the original certificate of title of the age of the owner was caused by negligence and resulted in damage to plaintiff.

The trial court found there was no negligence on the part of the examiner; that "the standard of reasonable care does not require the examiner to go behind the finding of the probate judge to determine whether it is correct." It further stated "In this connection, the name Raymond

Pae, under which Land Court Application No. 1270 was filed, does not appear in the records of the Bureau of Vital Statistics of the Department of Health of the Territory of Hawaii." It concluded that the individual who was negligent was not the land-court examiner but plaintiff himself as he knew about and consented to the filing of the land-court application and he remained silent about his infancy, just as he did in the probate proceedings. He neither disclosed his age nor that he was born Kealohaokalani Lui.

It further appears that the plaintiff has not brought any action to recover the land by canceling or rescinding, or attempting to cancel, the deed and transfer certificate of title to the Freitases, as required by statute before bringing any proceeding against the treasurer.

The fact that the land was registered would not affect the infant's right to disaffirm the deed though it might affect his right to recover the land from bona fide purchasers. It does not appear whether the Freitases were purchasers in good faith or not; it does appear that they bought this land for less than half its stipulated value.

The action of plaintiff in disaffirming the sale was made speedily and within a reasonable time after he reached his majority and discovered the fraud. (*Jellings* v. *Pioneer Mill Co.*, 30 Haw. 184; *McCandless* v. *Lansing*, 19 Haw. 478.) See also *Nawahi* v. *Hakalau Plantation Co.*, 14 Haw. 460, where a ward disaffirmed, after coming of age, a lease made by his guardian extending beyond the time of minority.

As to what the rights of an infant would be upon disaffirming a deed to land registered under Torrens title would depend upon the nature of the certificate of title, whether it gives an "indefeasible title" or a "guaranteed" one.

Niblack, in his discussion of the *Torrens System*, points out that in Australia such a title is supposed to be

a "guaranteed" one rather than an "indefeasible" one, the former title guaranteeing either the right to the land or proper compensation for its loss if it be taken away from him by a superior title, while an "indefeasible" title to land is one which gives to its holder the right to eject the whole world.

Our own court seems to take the view that this certificate carries an indefeasible title and not a guaranteed one. See *Land Title, Bishop Trust*, 35 Haw. 816, which holds: "A subsequent purchaser of registered land who takes a certificate of title for value, except in cases of fraud to which he is a party, is entitled, under the provisions of R. L. H. 1935, § 5041, to hold the same free from all encumbrances, except those noted on the certificate and the statutory encumbrances enumerated." Judge Stafford dissented in this case.

Regardless of which is the correct theory, the plaintiff in this case has not exhausted his remedy before bringing the suit against the treasurer, as the statute requires, and further, under the statutory proceeding the plaintiff must show an absence of negligence on his part.

Although the pleadings of the plaintiff seem to be based on the theory that the right of action against the treasurer is tort and its foundation is negligence of territorial officials, and the trial judge did make a finding that the failure to register the infancy of plaintiff upon the certificate was not due to the negligence of the examiner of titles but was due to the negligence of the plaintiff, the action is not one of tort but is one of contract which permits an owner, who is without fault or negligence, to recoup his loss from the indemnity or insurance fund which is exacted when the land is first registered.

An infant may repudiate a deed, regardless of his negligence, and even under the holding in *Land Title, Bishop Trust, supra,* could recover the land unless the

purchasers were bona fide purchasers without knowledge of the infancy of plaintiff and the fraud perpetrated upon him. There is no showing that he might not have succeeded in repudiating the deed and recovering the land, depending upon the good faith of the purchasers.

However, there is ample evidence to sustain the finding of the trial judge that the failure to register the age of plaintiff upon the certificate was due to the negligence of the plaintiff himself and therefore he may not recover from the treasurer even had he exhausted his remedies against others prior to the institution of suit against the treasurer.

Judgment affirmed.

*Wai Yuen Char* for plaintiff-appellant.

*Richard K. Sharpless,* Deputy Attorney General, for Kam Tai Lee, Treasurer of the Territory of Hawaii, appellee.