256 F.2d 208
 Raymond PAE, also known as Kealoha-kalani Liu, Appellant,
v.
Ruth Lehua STEVENS, Samuel Stevens, also known as Boyd
Stevens, and Kam Tai Lee, Treasurer of the
Territory of Hawaii, Appellees.
 No. 15498.
 United States Court of Appeals Ninth Circuit.
 Feb. 14, 1958.
 
 Wei Yuen Char, Honolulu, Hawaii, for appellant.
 Herbert Y. C. Choy, Atty. Gen., Richard K. Sharpless, Henry H. Shigekane, Deputy Atty. Gen., Territory of Hawaii, for appellees.
 Before HEALY and FEE, Circuit Judges, and ROSS, District Judge.
 JAMES ALGER FEE, Circuit Judge.
 
 
 1
 In an action brought by Raymond Pae under the provisions of the modified Torrens law, adopted by the legislature, to recover for the conveyance by fraud, during his minority, of real property owned by him, the Supreme Court of Hawaii affirmed the finding of the trial court 'that the failure to register the age of plaintiff upon the certificate was due to the negligence of plaintiff himself.'[1] Appeal was taken to this Court by Pae under 28 U.S.C.A. 1293.
 
 
 2
 Raymond Pae, also known as Kealohakalani Liu, was born on February 12, 1920. About September 1, 1925, plaintiff assumed the name of Raymond Pae, taking the surname of his uncle, with whom he was then living and by whom he was then nurtured. Soon after, he abandoned the use of the name of Kealohakalani Liu, and has not been so known since. Plaintiff was graduated from the public schools in Honolulu, having completed the twelfth grade. In 1940, plaintiff was married under the name of Joseph Liu. In 1938, his uncle died, leaving a will by which he gave his property 'to my two nephews, Joe Pae and Raymond Pae, equally.' The estate consisted of two parcels of real property located on the Island of Oahu. During the probate of the will of his uncle, which was collateral to this cause, one Samuel Stevens, in the presence of plaintiff, stated to Charles E. Cassidy, attorney for the estate of the uncle, that plaintiff was an adult. Plaintiff remained silent. The order of distribution of the estate of the uncle was made in part to 'Raymond Pae, Honolulu, Territory of Hawaii, adult and nephew of said deceased.' On February 17, 1939, plaintiff and his brother, Joseph Pae, mortgaged Parcel 1 of the real property to a bank to secure a loan of $2,500.00, which instrument was duly recorded, and again on June 17, 1939, the brothers mortgaged this parcel, subject to the bank mortgage, and the other parcel of the land to G. D. Crozier to secure a loan of $1.00 and future loans up to $1,000.00 for costs and expenses which they might incur in connection with land court registration of both parcels of the land. This mortgage was also duly recorded. On August 10, 1939, the bank which held the mortgage filed in the Circuit Court of the First Judicial Circuit, Territory of Hawaii, a bill in equity to foreclose the first mortgage above mentioned. On September 12, 1939, plaintiff and his brother executed a power of attorney to Ruth Lehua Stevens, which was duly recorded. Ruth Lehua Stevens obtained the power of attorney in order to defraud plaintiff and his brother, Joseph Pae. On October 9, 1939, plaintiff and Joseph Pae mortgaged Parcel 1, subject to the bank mortgage, to a finance company to secure a loan of $500.00. On October 11, 1939, the bank discontinued with prejudice its bill in equity above mentioned to foreclose this mortgage. On October 11, 1939, Jordan Freitas, Jacob F. Carreiro and Ruth Lehua Stevens, as attorney in fact for the Pae brothers, signed an agreement which stated in substance that Jordan Freitas had delivered $1,700.00 to Jacob Carreiro in escrow, to be released to the Paes or their authorized representative in part payment for Parcel 1, provided that Land Court Certificate of Title issue to plaintiff and his brother, Joseph Pae, indicating that they hold fee simple title and that a land court deed be delivered to Jordan Freitas. Otherwise, the money was to be returned. On October 24, 1939, Ruth Lehua Stevens, acting under the power of attorney, made written application to the Land Court for the registration of Parcel 1. The brothers had notice of and consented to this application. Abstract of title was filed in the Land Court along with this application, which showed the designation of Raymond Pae as an adult in the order of distribution of the Probate Court. The Land Court referred this application to an examiner of title to 'search the records and investigate all facts stated in said petition or otherwise brought to your notice in reference to said petition.' No examination was made of either plaintiff or the records of the Bureau of Vital Statistics in order to determine whether or not plaintiff was an adult. The name 'Raymond Pae' does not appear in the records of the Bureau of Vital Statistics of the Department of Health of the Territory of Hawaii. On January 17, 1940, the Land Court entered a decree with respect to the application previously filed, in which the court described the registered owners as 'Joseph Pae (unmarried) and Raymond Pae (unmarried) both having as their residence and post office address 1022 Fourth Avenue, Kaimuki, Honolulu, City and County of Honolulu, Territory of Hawaii, as tenants in common in equal shares.' The decree did not describe plaintiff as a minor, as required by the statute.[2] Pursuant to the decree, the Land Court issued original certificate of title. Plaintiff did not attend any hearing in connection with this land court application. Plaintiff did not at any time see the original certificate of title issued pursuant to decree. On January 19, 1940, Ruth Lehua Stevens, acting by the authority of the power of attorney, deeded Parcel 1 to Jordan Freitas and Carrie Freitas, husband and wife. The mortgages were satisfied from the proceeds of sale. Plaintiff himself did not receive any part thereof. Ruth Lehua Stevens converted the balance of the proceeds of the sale to her own use. The deed, signed by Ruth Lehua Stevens under power of attorney alone, was filed January 20, 1940, in the office of the Assistant Registrar of the Land Court, who issued to the Freitas a transfer certificate of title. Plaintiff did not know that the Freitas wanted a land court title before the consummation of the sale of Parcel 1 and did not know the purpose of the land court application.
 
 
 3
 On May 13, 1940, plaintiff Raymond Pae attained the age of twenty years and was thereby freed from disability under Hawaiian law.[3] He was thereafter an adult. On or about October 8, 1940, plaintiff first learned of the sale of Parcel 1 to the Freitas. On October 31, 1940, some months after obtaining his majority, plaintiff rescinded all acts done pursuant to the power of attorney as to himself. Plaintiff did not bring any action in any court for the purpose of cancelling or rescinding or attempting to cancel or rescind either the deed or the transfer certificate of title to the Freitas. At the time of the execution of the legal instruments, plaintiff was employed as a truck driver at the Mokapu Naval Air Base. The fair market value of Parcel 1 then was $14,000.00. The purchase price on the transfer to Freitas was $5,750.00.
 
 
 4
 On December 5, 1940, plaintiff, as 'Raymond Pae, also known as Kealohakalani Liu,' brought action against Ruth Lehua Stevens, Samuel Stevens and Norman D. Godbold, Jr., Treasurer of the Territory of Hawaii. After trial, judgment was entered dismissing the action of plaintiff. Whereupon, the appeal was taken by plaintiff to the Supreme Court of the Territory of Hawaii. That court affirmed the judgment of the lower court on the ground that the omission of the age of the infant owner, Pae, from the original certificate of title was due to the negligence of Pae himself. An additional ground of affirmance was suggested which will be discussed later in this opinion.
 
 
 5
 This Court adheres strictly to its limited power to review a decision of the Supreme Court of Hawaii. The instant decision must be accepted insofar as it is in conformity with the Constitution and applicable statutes of the United States and is not patently erroneous in statement or application of governing principles.[4] It is our duty to consider a case where manifest error is apparent. We will not impose our preference for a rule of law upon Hawaii. Therefore, this Court will not interfere unless there has been a clear departure from ordinary legal principles.[5]
 
 
 6
 The construction of a statute of Hawaii is involved. In the first place, this statute permits the registration of land under the modified Torrens system in the name of a person and also the transfer of title under such system to a third person.[6] Likewise, a section of the statute permits any person, who has sustained loss or damage or been deprived of an interest in land after the original registration, 'through fraud, or in consequence of any error, omission, mistake or misdescription in any certificate of title,' to prosecute under certain conditions an action of contract against the Treasurer of the Territory to recover compensation therefor.[7]
 
 
 7
 The statute of Hawaii which sets out the sources of law of the jurisdiction expressly declares that the common law of England is the common law of the Territory of Hawaii in all cases 'except as otherwise expressly provided' by (1) the Federal Constitution, (2) statutes of the Territory of Hawaii, (3) Hawaiian judicial precedent or Hawaiian usage.[8] No federal rights or issues arising from the Constitution or laws of the United States are here present. The Supreme Court of Hawaii refers to no usage of the Islands which affects the disposition of the case at bar. Furthermore, no instance is quoted or cited to us where the judges have heretofore filled in lacunae in the law upon the subjects under consideration. Therefore, except as expressly otherwise provided, this statute is to be construed in the light of the common law. Furthermore, since the Torrens Land Registration Law was originated in Australia[9] and has been adopted in several states of the Union in a common law atmosphere,[10] the adoption of this test is normal and appropriate. Under the common law, based upon feudal antecedents, the consensual incapacity of a minor was absolute, except as to a contract for necessities. In land law, the doctrine has never been relaxed in any jurisdiction where the common law has been adopted. Indeed, the theory has affected other branches of the law where the interests of minors have been brought in question.[11]
 
 
 8
 It seems improbable that the Territorial Legislature, when adopting this statute, did not act in the light of this established principle of the common law. It must be held therefore that the section of the law which requires the age of a minor to be stated and that which compels a legally appointed guardian to act for a minor in a land court proceeding are but ramifications of a common law rule.
 
 
 9
 Now the trial court found that the error in the decree of the Land Court was the failure to enter therein the age of plaintiff. The clear language of the enactment requires that 'every decree * * * shall * * * if the owner is * * * a minor, * * * state his age.'[12] Unquestionably, the duty is placed by this clause upon the court and examiner to determine first whether the applicant is a minor and, if so, to state his age in the decree. The trial court recognized the duty, but held the examiner to a minimum degree of care. This is put as follows:
 
 
 10
 '* * * the standard of reasonable care does not require the examiner to go beyond the finding of the probate judge (in the distribution of the estate of Pae's uncle) to determine whether it is correct.'[13]
 
 
 11
 The recitals of the age of an heir or distributee are immaterial in a probate court proceeding. Such recitals are not the result of contested issues, and, in any event, Pae was not a party to the proceeding, but a beneficiary.
 
 
 12
 If the age of a minor is not entered in the decree, it would seem even the test of reasonable care is not met. In any event, the provisions of the statute which may deprive an infant of property seem to require certainty upon the part of the court and the examiner.
 
 
 13
 But there is another clause of the statute which both the trial court and the Supreme Court of Hawaii have disregarded. It is expressly provided:
 
 
 14
 'Application for registration of title may be made by the following persons: * * * Infants and other persons under disability, by their legally appointed guardians * * *.'[14]
 
 
 15
 Since this statute confers a new right of registration of title, it seems clear that the clause above quoted established a procedural condition precedent. A minor has no standing to bring or prosecute the proceeding for land registration in his own name. Raymond Pae could not even file an application unless a legally appointed guardian appeared on his behalf. Similarly, neither Samuel Stevens nor Ruth Lehua Stevens, by virtue of the power of attorney, had authority to bring such an action. Thus there was no apparent authority for filing this application at all. This consideration might affect the jurisdiction of the court over Pae. It certainly imposes the duty upon this special tribunal and its examiner to discover whether an incompetent is applying for registration unrepresented by a legally appointed guardian.
 
 
 16
 The language of the section of the enactment seems to preclude the use of reasonable care as the measure of the right of recovery in contract by a person who has sustained loss or damage or been deprived of an interest in land. The recovery results from 'any error, omission (or) mistake * * * in any certificate of title.'[15] One who is bound by contract to perform an act is not absolved by the use of reasonable care.
 
 
 17
 On the other hand, the law under which Pae proceeds bars recovery if the plaintiff is chargeable with negligence.[16] The whole context of the statute in the light of the common law forbids the application of this bar to an infant, as will be hereafter explained.
 
 
 18
 Nevertheless, it is interesting to compare the absolution of the examiner discussed above with the heavy duty imposed upon the incompetent infant by the territorial courts. The trial court found Pae negligent because (1) he did not speak up in the Probate Court when it was stated he was an adult, and (2) because he did not make it known to the Land Court that he was incompetent to make a conveyance. It may be flatly said here there was no such duty upon the infant. Yet the Supreme Court of Hawaii affirmed a finding of negligence based upon these alleged specific breaches of this supposed obligation. Even if Pae had been a well trained lawyer, he might not have anticipated this contention. He was not present in the land court proceeding. There is no evidence that he knew his failure to advise the court that he was a minor was of any importance or that the law provided his age must be set out in the decree. Yet this is the sole negligence with which he is charged.
 
 
 19
 It is demonstrable that the clause of the section giving a remedy to a person sustaining loss of property, which prevents recovery unless the person is 'without negligence on his part,' was not intended to be and could not, under proper legal principles, be a bar to an incompetent by infancy.
 
 
 20
 The statute indicates that it was the purpose to give protection to a minor or person under other disability against anything in the proceeding which affected his right. It cannot be said that the statute protected the rights of a minor with one clause and completely took away the protection required by his disability by another. The positive injunction of the statute is that such a proceeding can be brought by a minor only through his legally appointed guardian. Any registration of title in his name without this condition precedent might deprive him of his property without his consent and leave him with no remedy, although the disability was the cause of the defect. We hold that the statute did not expressly place the burden upon the minor to personally intervene in court proceedings and demand that no registration of title in his name issue without the appointment of a guardian. Certainly the common law would not permit such an injustice. Otherwise, a babe in arms would be required to intervene. Since the protection is given by the terms of the statute, the extent of the disability is of no consequence. A hopeless idiot of full age could not be deprived of his rights by failing to demand the safeguards of the statute be observed. It was manifest error to hold there was such a duty.
 
 
 21
 The Supreme Court of Hawaii holds that the action against the Treasurer is based upon contract. Any effective negligence on the part of plaintiff must be negligence in connection with a contract or conveyance. But Hawaii has held that a minor cannot bind himself by 'contractual negligence.'[17] Under the Torrens Act, in slightly different forms, other courts have decided that a minor cannot be deprived of property rights without recourse against the assurance fund in connection with a transfer in similar circumstances under such a statute.[18] While such opinions are not binding upon this Court, and especially not upon the Supreme Court of Hawaii, the failure to come to a like conclusion might well indicate a departure from ordinary principles and perhaps a denial of due process.
 
 
 22
 The Supreme Court of Hawaii suggests an alternative line of reasoning, by which it intimates the result reached by the trial court might be upheld. It says that Pae did not exhaust his other remedies before resorting to the statutory action on contract against the Treasurer of the Territory. He joined his action against the Stevens with the action against the Treasurer, as he was permitted to do. There was no evidence in the record that he had any claim against either of the Freitas. Neither of them is shown to have been party to or had notice of the fraud. The Supreme Court of Hawaii said:
 
 
 23
 'An infant may repudiate a deed, regardless of his negligence, and * * * could recover the land unless purchasers were bona fide purchasers without knowledge of the infancy * * * and the fraud * * *. There is no showing that he might not have succeeded in repudiating the deed and recovering the land, depending upon the good faith of the purchasers.'[19]
 
 
 24
 Pae had no other remedy unless he could prove that the Freitas were not bona fide purchasers. Of course, the instant action would be properly defeated if it were pleaded and proved that the Freitas did not occupy that status. There was not a scintilla of evidence to that effect. The Freitas, so far as the record in this action is concerned, are bona fide purchasers[20] for value without notice. There is a presumption to that effect.
 
 
 25
 As is pointed out by the Supreme Court of Hawaii, the purchase price paid was less than half the value of the property. But that circumstance alone does not destroy the presumption. Furthermore, the requirement of exhaustion of remedies in the statute apparently lays only the basis in an affirmative defense. We therefore believe the decision is not in accord with the ordinary principles of law. However, our function here is one of great delicacy. Extreme 'deference (is) due to the understanding of the local courts upon matters of purely local concern.'[21] Notwithstanding the caution required in dealing with property rights of minors, we should not attempt to remodel the Hawaiian law, in accordance with the 'subordinations to which we are accustomed.'[22]
 
 
 26
 Although it therefore seems that the result and the reasoning are in manifest error, it may be that the Hawaiian courts may be able to clarify the position or to cite some decision of the past or call attention to local customs which vary the principles of the common law which appear to this Court applicable on the record before us.
 
 
 27
 Remanded for further consideration in the light of this opinion.
 
 
 28
 HEALY, Circuit Judge (dissenting).
 
 
 29
 My associates hold that the decision of the territorial Supreme Court is manifestly erroneous. Nevertheless, instead of reversing, they propose to remand the cause, apparently in order that the court below may have opportunity of correcting its error. This seems to me an odd procedure, the probable consequence of which will be no more then expense and delay. The appellees in the normal course of litigation would have the right at this juncture of seeking certiorari, but in the equivocal posture of the litigation they can hardly hope to get the ear of the Supreme Court.
 
 
 30
 The negligence of Pae, as found below, was, first, his not speaking up in the probate proceeding when it was stated in his presence that he was an adult, and, second, in not making it known to the Land Court that he was incompetent to convey land. My associates declare that 'it may be flatly said here that there was no such duty upon the infant.' One of the reasons they give for this flat holding appears to be that Pae was not present at the Land Court proceeding. A fair answer to this would seem to be that Pae had knowledge of the application and that he assented to it. It is said that there is no evidence that Pae was familiar with the requirements of the law. But is there not a presumption that he knew the law? Another reason my brothers give is that the imposition of a duty to speak and intervene would, if applied to appellant, have to be applied to all incompetents, even to babes in arms. I suggest in reply that the duty actually imposed by the statute is a duty to act reasonably. The Hawaiian court thought that appellant, a 19-year-old high school graduate, did not act reasonably when he failed to speak up at the probate hearing and when he failed to come forward and inform the Land Court that he was a minor. I have difficulty in seeing manifest error in this finding.
 
 
 31
 As I understand the opinion of my associates, it reasons as follows: First, this is an action in contract; second, at common law a minor has an absolute right to rescind a contract, except perhaps for necessities; and third, the negligence of a minor can not bind him to a contract. A difficulty with this course of reasoning, as I see it, is with the assumption that this case is truly an action in contract. The statute states that a suit under it shall be in contract, but the whole nature of the cause of action against the Treasurer appears to sound in tort. No contract between Pae and the registrar of deeds in apparent. Pae has a statutory right of action for damage to him caused by the registrar's mistake, negligence, fraud, omission, etc. These are the terms of a tort action; not of a contract action. Therefore, although at common law infancy is a complete defense to an action for performance of a contract into which the infant has entered, it is also true that the common law recognizes contributory negligence on the part of a minor. What constitutes negligence in any individual case depends upon the extent of the incapacity, for as a general rule one's acts are to be judged by those of the reasonable person of like age as himself. This would appear to be a case where the common law rule, applicable to a suit on a contract entered into by an infant, is being applied to a suit which is in contract only because of and to the extent that the statute says that the suit shall be brought in contract. This does not appear to me to be sufficient reason for holding the interpretation of the Hawiian court of an Hawaiian statute to be manifest error.
 
 
 32
 In its opinion the territorial court held that, as of the date of sale, the fair market value of the land was $14,000, whereas the purchasers paid but $5,750 for it. It held that, because of this great disparity, Pae should be required to seek recovery of the land from the purchasers before suing the Treasurer.[1] I am wholly unable to see manifest error in this approach.
 
 
 33
 In my opinion the holding below should be affirmed.
 
 
 
 [1]
 Pae v. Stevens, 41 Haw. 490, 498
 
 
 [2]
 'Every decree of registration shall * * * if the owner is under a disability * * * state the nature of the disability, and if a minor, shall state his age * * *.' Revised Laws of Hawaii 1945, 12638
 
 
 [3]
 The age of majority in Hawaii is twenty years. Revised Laws of Hawaii, 1945, 12261
 
 
 [4]
 Waialua Agricultural Co. v. Christian, 305 U.S. 91, 109, 59 S.Ct. 21, 83 L.Ed. 60. See also Carey v. Hilo Finance & Thrift Co., 9 Cir., 170 F.,2d 236, 238; Pioneer Mill Co. v. Victoria Ward, Ltd., 9 Cir., 158 F.2d 122, 125, certiorari denied 330 U.S. 838, 67 S.Ct. 979, 91 L.Ed. 1285
 
 
 [5]
 The role of the Court of Appeals and the Supreme Court in reviewing cases brought from the insular courts has been described as 'one which ordinarily cannot be performed summarily or without full argument and examination of the legal questions involved.' De Castro v. Board of Commissioners of San Juan, 322 U.S. 451, 458, 64 S.Ct. 1121, 1125, 88 L.Ed. 1384. The rule announced by the insular court 'will be rejected only on a clear showing that the rule applied by the local court does violence to recognized principles of local law or established practices of the local community.' De Castro v. Board of Commissioners of San Juan, 322 U.S. 451, 456, 64 S.Ct. 1124
 
 
 [6]
 Revised Laws of Hawaii 1945, 12600-12658
 
 
 [7]
 Revised Laws of Hawaii 1945, 12699
 
 
 [8]
 'The common law of England, as ascertained by English and American decisions, is declared to be the common law of the Territory of Hawaii in all cases, except as otherwise expressly provided by the Constitution or laws of the United States, or by the laws of the Territory, or fixed by Hawaiian judicial precedent, or established by Hawaiian usage * * *.' Revised Laws of Hawaii 1945, 1
 
 
 [9]
 See Niblack, An Analysis of the Torrens System of Conveying Land, page 7 (1912)
 
 
 [10]
 See American Law of Property, 17.39 (1952)
 
 
 [11]
 An example of such an Hawaiian statute provides: 'Capacity to buy and sell is regulated by the general law concerning capacity to contract and to transfer and acquire property. Where necessaries are sold and delivered to an infant, or to a person * * * incompetent to contract, he must pay a reasonable price therefor.' Revised Laws of Hawaii 1945, 9202
 
 
 [12]
 Revised Laws of Hawaii 1945, 12638
 
 
 [13]
 Pae v. Stevens, 41 Haw. 490, 495
 
 
 [14]
 Revised Laws of Hawaii 1945, 12612. This principle also finds expression in other sections of the Hawaiian statutes. 'Every guardian appointed under the provisions of this chapter * * * shall appear for and represent his ward in all legal suits and proceedings, unless another person is appointed for that purpose.' Revised Laws of Hawaii 1945, 12520. '* * * the court may appoint * * * (a) guardian ad litem for minors * * *.' Revised Laws of Hawaii 1945, 12626
 
 
 [15]
 Revised Laws of Hawaii 1945, 12699
 
 
 [16]
 The statute describes the person who may bring the action for recovery as 'any person who, without negligence on his part, sustains loss.' Revised Laws of Hawaii 1945, 12699
 
 
 [17]
 'An infant (is not liable) * * * where the negligence consists in the mere breach of a contract, for to permit liability in that case would be to deprive the infant of the protection which the law gives him in matters of contract.' Rathburn v. Kaio, 23 Haw. 541, 545
 
 
 [18]
 Jones v. York County, Nebraska, 8 Cir., 26 F.2d 623; Gayondato v. Treasurer of the Philippine Islands, 49 Philippine 244
 
 
 [19]
 Pae v. Stevens, 41 Haw. 490, 497
 
 
 [20]
 See Mack v. Marvin, 211 Ark. 715, 719, 202 S.W.2d 590; Fly v. Cline, 49 Cal.App. 414, 423, 193 P. 615; Warford v. McQueen, 375 Ill. 372, 377, 31 N.E.2d 599; Easter v. Severin, 64 Ind. 375, 381
 
 
 [21]
 Diaz v. Gonzalez, 261 U.S. 102, 105, 43 S.Ct. 286, 287, 67 L.Ed. 550
 
 
 [22]
 Diaz v. Gonzalez, 261 U.S. 102, 106, 43 S.Ct. 286, 287, 67 L.Ed. 550
 
 
 [1]
 The governing statute, Section 12699, Revised Laws of Hawaii 1945, providing for an action against the treasurer for compensation for loss by the registered owner occasioned by the registration of any other person as owner through fraud, mistake, or misdescription in the certificate of title, requires (1) that such registration be without any negligence upon the part of the original owner and (2) that the original owner exhaust his right of action or other remedy before resorting to a contract action against the treasurer