(No. 25914.—

WILLIAM H. WARFORD *et al.* Appellants, *vs.* JOHN W. McQUEEN *et al.* Appellees.

*Opinion filed Dec. 16, 1940—Rehearing denied February 12, 1941.*

CHARLES A. O'CONNOR, and FRANK E. DINGLE, for appellants.

GREEN & PALMER, WALTER E. WILL, and JOHN L. KAGY, (HENRY I. GREEN, ORIS BARTH, and ENOS L. PHILLIPS, of counsel,) for appellees.

CARL E. PERSON, *pro se,* cross-appellant.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellants filed their complaint in this cause in the circuit court of Marion county for partition of 216 acres of land. They also sought to enjoin and to remove as a cloud on the public record an oil and gas lease of the same premises executed by John W. McQueen to Harry F. Corbin and assigned by him to the Texas Company. The trial court granted the partition, but held the oil and gas lease valid and subsisting against appellants. It is from this latter portion of the decree that appeal is taken.

The issues grow out of a foreclosure, some years previous, involving the same premises. In 1919, Albert W. Wallace, as owner, executed a trust deed conveying the property to C. Alex Stone, as trustee, to secure the payment of notes aggregating $6500. The firm of Ranstead & McQueen, composed of Julia M. Ranstead and John W. McQueen, underwrote the mortgage and sold the notes to seven different persons, among whom were George P. Fischer and Warford Bros., a partnership made up of John H. and Albert S. Warford. In 1925, John H. Warford died testate. He left his property to Emma Warford, his wife, who was named executrix, with a provision that if she predeceased him, it was to go to appellants, William H. Warford and Mary W. Dingle. At the time of the suit at bar, Emma Warford was dead and appellants had succeeded to the estate.

In 1930, C. Alex Stone, trustee, Thomas L. Whittaker, George W. Egger, Elizabeth P. Eakin, Emil Fehrman, executor of the will of George P. Fischer, deceased, Emma Warford, as executrix of the wills of Albert S. Warford and John H. Warford, and John W. McQueen and Julia M. Ranstead, under the firm name of Ranstead & McQueen, as holders of the notes, filed a bill to foreclose the mortgage of 1919. A decree of foreclosure was entered directing a sale for cash and that a master's certificate of in-

debtedness under the 1917 act, be issued to the various complainants who were noteholders. Only one such certificate of indebtedness was issued which was to Ranstead & McQueen. The sale was held February 27, 1932, and the property bid in by Ranstead & McQueen, as co-partners, for $7500, leaving a deficiency of $1873.98.

According to the decree of foreclosure, the master's certificate of sale, the master's deed and the master's term report, the sale was for cash. The master testified in this suit, that he received only the costs of the proceeding, in cash, and that in satisfaction of the bid, he was given receipts executed by Earl H. Gromer, as attorney-in-fact appointed by the noteholders, for their distributable shares of the purchase money. In this way the noteholders contributed to the purchase price in the amounts of their respective notes. The master's deed was made out to Julia M. Ranstead and John W. McQueen, as co-partners, and vested title in them.

In December, 1931, an agreement was signed by all complainants in the foreclosure whereby Julia M. Ranstead and John W. McQueen were made agents and attorneys-in-fact of the other complainants to bid off and hold the property for all until it could be resold and the proceeds distributed. They were to take title to the premises "free from restrictions of record" and with "full and complete power to manage, possess and control the same and to sell and convey and to execute and deliver all proper instruments of sale and conveyance without liability on the part of the purchaser to see to the application of the purchase money." In accordance with the agreement, the title Ranstead & McQueen took from the master was in their own names as co-partners. No time was mentioned in the agreement for its termination or for the resale. The agreement was never recorded, but remained at all times in the private office files of the master until this suit was begun in 1938.

Albert S. Warford, one member of the Warford Bros. firm, was not a party to the foreclosure, individually or as a partner. Although he was purportedly represented by an executrix, Emma Warford, he did not die until 1932, two years after the decree of foreclosure and a few months after the master's deed was issued. The heirs of Albert are William H. Warford and Mary W. Dingle, appellants, who claim his interest in the premises through a note owned by Albert and used to satisfy the bid at the foreclosure sale. George P. Fischer died in 1928 leaving a will by which his estate went to his brothers and sisters. Appellants claim that the executor had no power to represent the estate in the foreclosure.

On July 9, 1936, Julia M. Ranstead, by quitclaim deed, later duly recorded, conveyed her interest in the premises to John W. McQueen. Thereafter, McQueen executed an oil and gas lease to Harry F. Corbin on September 24, 1937. Corbin and his wife assigned the lease to the Texas Company, October 7, 1937. None of the other parties interested in the premises signed the lease.

Between March and May, 1939, Mary W. Dingle and William H. Warford, both of whom had inherited interests from John H. and Albert S. Warford, purchased the interests of all persons in the land with exception of that of McQueen. In May, 1939, McQueen assigned his lessor's interest in the lease and deeded any other interest he had in the premises to Carl E. Person, cross-appellant, who reserved all rights to have the gas and oil lease set aside.

The court below held that the legal title was vested in appellants and cross-appellant, subject to the rights of the Texas Company under its lease. While appellants claim the foreclosure was invalid, they are claiming under the title acquired at the foreclosure sale. At no time have they attempted to have that sale set aside. They and the Texas Company rely upon the same foreclosure decree as a common source of title. Appellants claim through the for-

mer noteholders and argue that their interests in the premises partitioned below arose in one of two ways: Either by a purchase-money resulting trust by virtue of the contribution of the noteholders to the purchase price at the foreclosure sale, or by the agreement among the complainants in the foreclosure suit whereby McQueen was authorized to hold the title for all the noteholders. Under either theory, the interests of appellants were equitable in nature, and never appeared of record.

Appellants contend that the lease is not binding on them because the lessee is a purchaser with notice of their interests; that McQueen was a joint trustee with Mrs. Ranstead and the lease executed by him alone was invalid; that the 1931 trust agreement is void under the rule against perpetuities and that the legal title to the premises was vested in the several beneficiaries at the time of the foreclosure sale; that, even if the trust agreement is valid, its terms did not authorize the execution of the lease, and that the court erred in admitting in evidence the master's term report and receipts under the foreclosure.

It is urged that the foreclosure decree referred to the estates of Albert S. Warford and George P. Fischer, former noteholders; that the interests of those parties were never represented in the foreclosure, that by the foreclosure decree the lessee is charged with notice of the nonjoinder and of those interests. Appellants are in no position to take advantage of such a situation. If the foreclosure and sale as to those interests was unauthorized, appellants, as successors to those interests, cannot claim under the notes and at the same time claim under the foreclosure, as they do. Rights of a beneficiary in such a case are not concurrent but in the alternative, with a right of election. Having exercised his option he is bound thereby. Not having disaffirmed the foreclosure and sale, but having elected to lay their title thereunder they cannot complain it was invalid on any ground whether of jurisdiction

or irregularity. (*Dickson* v. *New York Biscuit Co.* 211 Ill. 468; *Penn* v. *Heisey,* 19 id. 295; *Byars* v. *Spencer,* 101 id. 429.) Moreover, the decree makes no reference to the estates of Albert S. Warford or George P. Fischer that even tends to show the non-joinder claimed. It is regular in form and neither the decree nor the pleadings or proceedings, contain anything to put a purchaser upon notice of a non-joinder.

All the public records of Marion county, including the decree of foreclosure, the master's certificate of sale, the master's deed and the master's term report, show that Ranstead & McQueen took title as co-partners for themselves. The lessee had no notice of record that they took as trustees.

It is also argued that the foreclosure file showed John W. McQueen was an attorney of record for the parties in the foreclosure, that the sale was voidable because he was one of those who took title at the sale, and that, for this additional reason, the lessee was put on inquiry which would have unearthed appellants' equities. The rule is that an attorney is not prohibited from buying the property of his client if the transaction is fair and honest. (*Hess* v. *Voss,* 52 Ill. 472; *Laclede Bank* v. *Keeler,* 109 id. 385; *Herr* v. *Payson,* 157 id. 244.) No facts appeared in the record showing any unfairness or dishonesty. The court approved the sale. The lessee was entitled to believe that the sale was proper and was not put on inquiry. Moreover, appellants have affirmed the sale by seeking partition and claiming under it. A purchaser is presumed to have purchased for value and in good faith. (*Anthony* v. *Wheeler,* 130 Ill. 128; *Harris* v. *Ingleside Building Corp.* 370 id. 617.) Since appellants have failed to prove notice, the finding below, that the lessee was a purchaser in good faith and without notice, must be upheld.

Appellants next contend that Mrs. Ranstead and John W. McQueen were joint trustees under the terms of the

1931 agreement; that the lease by McQueen alone was invalid; that the trust was void under the rule against perpetuities and therefore the title vested in the beneficiaries at the time of the sale, and finally that, if valid, the trust agreement did not authorize any lease. The Texas Company was a purchaser in good faith without notice of any of these matters and, as such, was entitled to rely on the record. (*Grundies* v. *Reid,* 107 Ill. 304; *Lennartz* v. *Quilty,* 191 id. 174; *Bullard* v. *Turner,* 357 id. 279; *Vombrock* v. *Wavra,* 331 id. 508.) At the time of the execution of the oil and gas lease, as well as its assignment to the Texas Company, the record showed the entire title was in John W. McQueen, and the assignee was entitled to rely upon that record. What is said above also disposes of the claim of cross-appellant, Person, that the lease by McQueen is invalid.

It is argued that the lease executed by John W. McQueen is void because in violation of the Joint Rights statute. When the appellee oil company acquired its lease from McQueen he was not, so far as the record, upon which the Texas Company could rely, showed, a tenant in common with anyone. The statute and cases cited by appellants on the rights and duties of co-tenants are not in point.

The claim that the court erred in admitting the term report of the master, which included receipts from the noteholders for their distributive shares of the purchase money from the foreclosure sale, is without merit. The exhibit was competent as a part of the foreclosure proceedings, upon which the lessee bases its title.

The decree of the circuit court of Marion county is affirmed.

*Decree affirmed.*