(No. 34848.—

JAMES W. WOODWARD *et al.,* Appellants, *vs.* R. H. SCHULTZ *et al.,* Appellees.

*Opinion filed January 23, 1959.*

JACK E. WALKER, of Lansing, (CHARLES D. SNEWIND, of counsel,) for appellants.

PHILIP C. SHEEHAN, and LISSNER, ROTHENBERG, HOLZER & BARTH, both of Chicago, (REGINALD J. HOLZER, of counsel,) for appellees.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This is an equity proceeding instituted by certain residents, citizens and taxpayers of the village of Lansing, each of whom is the owner of property in a subdivision in that village, known as Schultz Park Subdivision. The

plaintiffs seek to compel the record owners of lot 342 in that subdivision to convey the same to the defendant Lan-Oak Park District, to be used as a public park, and, at the same time, seek to enjoin the defendant park district from proceeding with a condemnation case now pending in Cook County, wherein the lot in question is sought to be taken for use as a public park.

The plaintiffs further seek injunctive relief necessary to keep the record owners of the lot in question from filing with the village or with the defendant Registrar of Titles a plat of lot 342 resubdividing the area for residential purposes.

The case was referred to the master who heard extensive evidence in connection with the history and development of Schultz Park Subdivision. The master recommended that the defendant owners be compelled to convey the premises in question to the defendant park district or, in the alternative, that the defendant village be decreed to be the legal holder of title in trust for park purposes.

The lower court sustained exceptions to the report of the master and dismissed the complaint for want of equity. This appeal raises the question of the existence of a common-law dedication and thus involves a perpetual easement. A freehold is therefore in issue, and the appeal is properly brought to this court. *Stevenson* v. *Lewis*, 244 Ill. 147.

In order to fully comprehend the nature of the issue presented here for decision, it is necessary to rather fully state the facts relating to the development of Schultz Park Subdivision and the history and nature of the transactions relating to property in that subdivision.

In 1927 one H. F. W. Schultz and his sister were the owners of a certain 80 acres of unimproved farm land lying south of and contiguous to the village of Lansing. In May of that year, the owners executed a trust agreement, by the terms of which Schultz took title as trustee of the 80 acres.

In the following month, Schultz, as trustee, filed a plat of the 80-acre area with the recorder of deeds of Cook County, wherein the area was designated as "Schultz Park Subdivision." This plat shows the entire subdivision to be divided into 371 lots with streets and alleys indicated thereon. The lots are not unlike the usual and customary lots to be found in residential areas, varying in width from 25 or more feet and of various depths, but with a general average depth of 135 to 150 feet.

In the center of the plat there is an area of approximately five acres, bounded on all sides by streets, as platted in the subdivision, and this center area is designated as lot 342. This is the only lot in the subdivision which, by reason of its five-acre area, is not a lot ordinarily thought of as a residential lot of the type usually found in subdivisions in Cook County.

The subdivision was soon thereafter annexed to the village of Lansing, and Schultz, as trustee, began the sale of lots. The sale was by printed form of articles of agreement for warranty deed or printed form of contracts for deed, and on the back of the printed form as used was a map of the subdivision, essentially the same as the plat of the subdivision, but lot 342 was designated on the map by its lot number and the area as indicated on the map bore the additional legend of "Schultz Park."

One such contract for deed form has a printed map of the subdivision showing lot 342 as such and as "Schultz Park," and has additional drawings indicating diagonal sidewalks from the four corners of the lot to a circle in the center. The map on this particular printed form bears the additional printed reference to a proposed playground, a proposed bandstand, proposed tennis courts, as well as reference to a proposed swimming pool.

The record indicates that sales of lots in the subdivision were by Schultz, as trustee, using the printed forms above described. Some of the sales were made personally by

Schultz and others were made by real-estate agents who had real-estate agreements with him for the sale of certain of the lots. The real-estate agents, in connection with the sales made by them, used the printed form of contract for deed furnished by Schultz. In 1928 Schultz had engineers prepare sewer and water-main maps based on the original plat of the subdivision. One of the engineers engaged to do the work testified that no mains were designated for lot 342 because Schultz stated to him that "he was going to donate or deed it to the village for a playground if they would accept it and take care of it, and if they would establish it as an official playground or recreation center so that it could be used by the public."

The sewer system as platted was put in by means of a special assessment against lots in the subdivision, although no part of the assessment was made applicable to lot 342. However, in 1949, when one of the streets bordering lot 342 was to be paved, Schultz, as trustee, paid for one-half of the paving.

The sale of some lots in the subdivision was shown to have been based upon representations that lot 342, or Schultz Park, was an area designated for public park purposes. The evidence is that the price of lots near the park area, or lot 342, was higher than other lots in the subdivision.

Many purchasers of lots prior to the depression eventually defaulted on their contracts for deed and, in fact, the entire subdivision did not meet with any appreciable degree of success until in 1936 when builders began construction of FHA insured homes. The record demonstrates that FHA approval of the area was based upon information in the application for approval to the effect that lot 342 was park area to be publicly maintained. The information was supplied FHA by one August P. Sargol, a real-estate agent and builder, who testified that Schultz told him the five-acre area "was a park." The record is clear that

Schultz offered to deed lot 342 to the village of Lansing as early as 1928, conditioned only upon the village making certain improvements for park purposes and maintaining the area as a public park. The village declined the offer of the conveyance for the stated reason that there were not sufficient village funds to comply with the conditions imposed for the conveyance and for the reason that the village did not have sources of revenue sufficient to improve and maintain the area as a park. This conditional offer to convey appears to have been a standing offer to convey title to the village upon compliance with the conditions, which were not varied, and the offer was kept open until around 1945. By 1945 some 60 homes had been completed in the subdivision.

In 1951 the village requested a conveyance of lot 342 and was told that the land was no longer available and that the offer previously made to convey had been rescinded. Later on, the park district, which had been formed a year or so prior to the request of the village for a conveyance, instituted condemnation proceedings in 1951, in order to acquire the five acres of lot 342 for use as a public park.

This action is to enjoin the further prosecution of that condemnation case by the park district for the reason, as the plaintiffs allege, that the area is already public property to be used by the public as a park.

The evidence as to the use of the area as a park by the public is actually uncontroverted. At most, the parties in this proceeding disagree only as to the nature and extent of the use. It is clear, however, as the master found, that "there was a user by the public as a public park."

The decree of the chancellor adequately summarizes the question of user of the premises by the public as follows:

"A good deal of evidence has been introduced in this case showing the use of Lot 342 by certain parties, the 'Old Timers Baseball League,' Girl Scouts, people living in the vicinity of Lot 342 using it for golf chip shot practice, and

neighborhood children playing games and flying toy airplanes. The evidence further discloses that the 'Old Timers Baseball League' sought the consent of the owners of the property before using it for playing baseball. There is evidence that there at one time had been placed on the lot a backstop used in playing baseball by someone other than the owners or the Park District. At one time or another tennis was played on the lot but at no time was there any real improvement made, other than by the W.P.A., which at one time raised the pitcher's. mound. The evidence further shows that at no time did the City remove the weeds, and that at intervals from 1927 until the filing of this suit the owners used it for farming purposes."

The conclusion of the master that there was an operative statutory dedication of lot 342 to the village is not supported by the evidence. The original plat designates lot 342 only as lot 342 and no mention is there made of a park. Statutory dedication of land requires compliance with statutory provisions in order that the dedication be complete, and statutory dedication, upon the filing of the plat, operates as a conveyance of the property and, as such, involves title. Since the only recorded plat in the instant case makes no mention of lot 342 being a park, it seems clear that no statutory dedication is here involved. Indeed, the parties have conceded in oral argument of this cause that there is not here present a question of statutory dedication.

Statutory dedication of land is distinguished from common-law dedication for public use in several important respects. Those distinctions which are germane to this case are that statutory dedication involves compliance with statutory procedures for dedication and that statutory dedication results in a conveyance of title of the subject property to an ascertainable grantee. A common-law dedication has no effect upon the title to the property as such but grants only an easement to the public. *Hooper* v. *Haas,* 332 Ill. 561. (See 23 Ill. Law Rev. 607. )

An ascertainable grantee capable of taking, that is in existence at the time of the dedication or that is created subsequent to the dedication, is not necessary to a valid common-law dedication of land to a public use, since the public is an ever-existing grantee capable of taking dedications for public uses without the existence of some corporate form capable of taking title. The reason for this distinction is apparent when it is ascertained that statutory dedication involves title; whereas common-law dedication grants only an easement, and there is no need for divestiture of title by the owner who has dedicated the property for public use. *Ryerson* v. *City of Chicago,* 247 Ill. 185; *Nelson* v. *Randolph,* 222 Ill. 531.

Two things are essential in order to establish a dedication of land to the use of the public by means of common-law dedication: The first is an intention on the part of the owner to dedicate, and the second is acceptance by the public. (*McCue* v. *Berge,* 385 Ill. 292.) The intent of the owner to dedicate may be established in various ways. Of course, a statement of intention in writing in the form of a conveyance, or a deed, or a grant, is the most obvious. Parol statements wherein the intention is manifest are sufficient. (*Smith* v. *Ladage,* 397 Ill. 336.) In fact, intention to dedicate land to a public use is not unlike establishing intention in other matters and may be shown by any means whereby the intention of the dedicator can be established. (*People* v. *Chicago and Northwestern Railroad,* 239 Ill. 42; *Ingraham* v. *Brown,* 231 Ill. 256.) In the last cited case, we said "intention may be established in any conceivable way by which it may be made manifest that it was intended to set said strip aside as a public street."

The intention of the owners of lot 342 to make a future dedication by conveyance to the defendant village is uncontroverted. The intention to dedicate the land to the use of the public prior to the actual conveyance is clearly established by the evidence in this case. Several

witnesses testified that the owner or his agents represented the area as a public park. One witness quotes the owner as saying it was a park. The future improvements in the form of recreational facilities to be made were, of course, conditioned upon the expenditure of public funds, but the actual expression of intent by the owner to dedicate as a park can and, indeed, must be separated from the expressions relating to the completion of future improvements.

In addition to the above factors indicating an intention to dedicate the premises to public use, the evidence in this case is that the entire 80-acre tract was on the tax rolls prior to the filing of the plat of the subdivision. Immediately after the filing of the plat and the annexation of the subdivision to the village of Lansing, the 5-acre tract in the center was removed from the tax rolls and no taxes were paid upon that 5-acre tract until 1951. The failure of the owner of the property, if he had not, in fact, dedicated the same to public use, to list the property for taxation after the plat is filed is certainly strong evidence of an intention to dedicate the land to public use. *Owen* v. *Village of Brookport*, 208 Ill. 35.

It is our opinion that the intention of the owner to dedicate has been affirmatively shown, and the additional factor that the owner caused a plat or a map of the subdivision to be printed showing lot 342 as a park for public use, and the use of such map in the sale of lots in the subdivision, estops the owner from now denying the fact of the intention to dedicate. *Village of Benld* v. *Dorsey*, 311 Ill. 192; *Kimball* v. *City of Chicago*, 253 Ill. 105.

We now have to determine whether there was an acceptance of the dedication by the public. We believe there was. The record establishes that the area was known and referred to as a park. It was used as a park. Children played there. Community recreation was a use to which the 5-acre tract was put. Some improvements for recreational purposes were made on the premises. Public use with the

knowledge of the owner is shown. Proof that in certain instances the area was used by the public by consent of the owner does not vitiate the showing of general public use with the knowledge but without the express consent of the owner. *Clokey* v. *Wabash Railway Co.* 353 Ill. 349; *Village of Benld* v. *Dorsey,* 311 Ill. 192.

Since we have concluded that lot 342 of the subject subdivison was, in fact, dedicated to the public, accepted and used by it, other questions initially raised with reference to conveyance of title need not be considered. The decree below will, therefore, be reversed and the cause remanded to the superior court of Cook County for the entry of a decree in conformity with the views expressed in this opinion.

*Reversed and remanded, with directions.*