ETHEL LARGE et al., Plaintiffs-Appellees, v. LOUIS C. LYONS et al., Defendants-Appellants.

(No. 74-165;

Second District (1st Division)—September 24, 1975.

Lyle H. Rossiter, State's Attorney, of Glen Ellyn, and Harry C. Bell, of Chicago, for appellants.

Lester E. Munson, of Wheaton, for appellees.

Mr. JUSTICE GUILD delivered the opinion of the court:

The defendants appeal from an order of the circuit court of Du Page County which voided a tax deed issued to the defendants' predecessors in title and ordered the subject property, save one lot, to be conveyed to the West Chicago Park District, a nonparty to the instant proceedings.

The subject property, known as High Lake Park, consists of approximately 8 acres of land in the High Lake area of Du Page County. High Lake was originally developed by Edmund A. Cummings, who recorded a plat of High Lake Subdivision in 1910. The plat indicated that the subject property, which at that time contained a shallow lake of about 3 acres, was "not a part of the subdivision." Lots in the subdivision were thereafter sold on the representation that the subject property would be devoted to "park and recreation purposes." A "community clubhouse" was erected on the subject property with a road and footpath leading to it. The grounds were cared for by Cummings during his lifetime and upon his death in 1922, by an association of residents known as the High Lake Improvement Association, from 1923 to 1925. Houses have been erected on some of the lots in the subdivision, but many of the lots are still vacant.

Neither the will nor a record of the probate of the estate of Cummings appear of record in Du Page County. The instant record does indicate, however, that upon the death of Cummings, the defendant, Chicago Title and Trust Company, as trustee under Cummings' will,

became the holder of the legal title to the subject property. The plaintiffs introduced an exhibit which purported to be a statement authorized on July 28, 1927, by an officer of the defendant Chicago Title and Trust Company which stated:

"This declaration witnesseth that the undersigned, the Trustee under the Will of said Edmund A. Cummings claims no interest in said land other than to see that it is devoted to park and recreational purposes as intended by the said Edmund A. Cummings and Will, on the request of the persons authorized to direct conveyance, convey the title to said land to Park Commissioners or Trustees, or Village officers, or such other public body as may be entitled to take title and own and maintain said land for the purposes for which it has heretofore been used and as a public park for the use of residents and owners of lots in High Lake."

The instant record further indicates that the subject property was exempted from taxation by order of the county court in 1927 as a result of objections filed by Chicago Title and Trust Company. While the record of those proceedings does not appear in this record, it appears that Chicago Title and Trust Company alleged, and the court based the exemption upon its finding, that all of the beneficial use of the subject property had become vested in the public by reason of the dedication thereof by Cummings to the public use and the subsequent use thereof by the public.

By the early 1950's, the lake in High Lake Park had dried up, the clubhouse had burned down and the property had become overgrown. Beginning in 1954 an effort was begun to restore the lake and rehabilitate the park but this effort proved unsuccessful and the area was "left to go back to nature."

Based upon the affidavit of one Henry G. Bates, the subject property was placed on the tax roles in 1954. The taxes were assessed to Edmund Cummings, who apparently was still listed as the record owner of the parcel. The taxes assessed against the property in 1954 were not paid and in 1958 an order was entered directing the issuance of a tax deed to one L. Paul, the purchaser of the property for delinquent taxes. Thereafter, by mesne conveyance, the property was conveyed to the defendant, State Bank of West Chicago as Trustee, with the defendants, Louis C. Lyons and Lawrence D. Veber, as the beneficial owners thereof. A plat of subdivision of the property was recorded on May 8, 1972, and on May 16, 1972, lot 1 in the subdivision was conveyed to John R. and Marie S. Blasen, who executed a mortgage and thereafter erected a house thereon. General taxes have been levied on the subject property since 1958 and have been paid annually.

The instant action was commenced on June 22, 1972. Plaintiffs Large and Fry own property immediately adjacent to the subject property and plaintiffs Sargent and Stough own property in the immediate vicinity thereof. In Count I of their amended complaint, plaintiffs, in essence, alleged that the title to the subject property held by the defendant, State Bank of West Chicago as trustee, defeats the purposes set forth by Cummings when he conveyed the property to Chicago Title and Trust Company to be held "*  *  * as a public park for the use of residents and owners of lots in High Lake." Count II stated an action in ejectment seeking damages wherein, *inter alia*, plaintiffs alleged that the defendants Lyons, Veber and State Bank had unlawfully entered into High Lake Park and taken possession and control thereof.

Defendants answered the amended complaint and, in addition, stated several affirmative defenses. In essence, the defendants alleged that the defendant, State Bank, held title to High Lake Park by a series of conveyances, beginning with the deed obtained by L. Paul and that plaintiffs were attempting to collaterally attack the proceedings in which L. Paul obtained title to the property. Defendants then variously prayed that the court find that the complaint was in effect a petition under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 72), seeking post-judgment review of the tax deed proceeding; that the order for the issuance of the tax deed is reviewable only by appeal; that the title of the State Bank of West Chicago is a fee simple title by reason of section 7 of the Limitations Act (Ill. Rev. Stat. 1971, ch. 83, par. 7); that section 72 relief cannot be had more than two years after the entry of the order for the tax deed; that the State Bank of West Chicago and its grantees are bona fide purchasers for value and immune from attack under the provisions of section 72(5) of the Civil Practice Act; that plaintiffs lack an interest in the subject property sufficient to entitle them to maintain the suit; and that plaintiffs' action is barred by laches.

At the beginning of the trial of this case, the following colloquy ensued between Mr. Munson, counsel for the plaintiffs, and Mr. Rossiter, counsel for the defendants Lyons, Veber and the State Bank of West Chicago:

"MR. MUNSON: *  *  * Mr. Rossiter in his answer has raised an affirmative defense, or I should say affirmative defenses, almost all of which pertain to the issuance of a certain tax deed to a man known only as L. Paul for the real estate taxes for the year 1954.

I have not replied to the factual allegations in that affirmative defense, as I review my file.

And as far as I am concerned, all of the facts which Mr. Rossiter

has pleaded in that affirmative defense are well pleaded and are admitted by the plaintiffs in this case.

Insofar as the tax deed is concerned, which I understand is the only thing which you have set forth in that affirmative defense * * *

MR. ROSSITER: We have fee title by reason of the tax deed and also by reason of having paid taxes for more than seven successive years.

Of course there has been no challenge to the tax title, so we have that plus possession.

MR. MUNSON: I cannot in good faith deny any of that and have not."

Plaintiffs then proceeded to produce several witnesses who variously testified to the recent history of High Lake Park. This testimony detailed the deterioration of the area, the unsuccessful efforts to rehabilitate it and the present use of the property for recreational purposes. Defendants produced no evidence at trial, relying instead upon the pleadings.

The trial court then entered the order from which this appeal is taken. In its order, the trial court found that the amended complaint was, in effect, a section 72 petition seeking to vacate the order directing the issuance of a tax deed to L. Paul; that said order is null and void; and that all deeds in the chain of title from L. Paul, to and including the defendant State Bank of West Chicago, were void. The court further found that Cummings intended the subject property to become a public park; and that title to the same (except the title to lot 1 held by Mr. and Mrs. Blasen which was held to be unaffected by these proceedings) should be conveyed to the West Chicago Park District, which was not a party to the case. Lastly, the court held that the defendants State Bank of West Chicago, Lyons and Veber are not entitled to reimbursement from any party to the suit for money expended for the payment of taxes, investment in the purchase of the property and the improvement thereof.

At the outset, we note defendants' argument that the subject property was properly placed back on the tax rolls in 1954 was based upon a 1939 amendment to the Revenue Act restricting the kinds of property having tax exempt status. Defendants note that, whereas the relevant 1928 provision exempted "* * * public grounds used exclusively for public purposes * * *" (Ill. Rev. Stat. 1929, ch. 120, par. 2), that section was amended in 1939 to exempt "* * * public grounds *owned by a municipal corporation* and used exclusively for public purposes * * *" (Ill. Rev. Stat. 1939, ch. 120, par. 500(a)). (Emphasis added.) Defendants go on to argue that plaintiffs did not allege that the property in question was ever owned by a municipal corporation.

■■ We find, however, that the Illinois Supreme Court, in *People ex rel. Williamson v. City of Toulon* (1921), 300 Ill. 408, 413, 133 N.E. 707, 709, interpreted the relevant 1919 exemption of "* * * public grounds used exclusively for public purposes * * *" to require that, in order to be exempt, the property "* * * must be owned by a municipal corporation by such title that it can be said to be the property of such municipality." It thus appears that the 1928 statute under which the property was exempted did not, when properly construed, provide a sound basis for the exemption of the property in 1927. This appears to be the case *even if* the county court, in 1927, found the existence of a common law dedication of the property since the same grants only an easement in the property to the public, as noted below. It also thus appears that the 1939 amendment did not alter the factors necessary for the subject property to retain its tax exempt status, as defendants claim.

■■ Despite the foregoing, we find that since it was not alleged that the property in question was owned by a municipal corporation or otherwise entitled to tax exempt status *in 1954*, that returning the property to the tax rolls at that time was proper. We also note that section 270 of the Revenue Act (Ill. Rev. Stat. 1971, ch. 120, par. 751) provides that tax deeds constitute prima facie evidence that the real estate conveyed was subject to taxation at the time it was assessed. Finally, as will be developed below, we find that plaintiffs were not in a position in 1972 to challenge the propriety of returning the property to the tax rolls in 1954 resulting, ultimately in the issuance of a tax deed in 1958.

Plaintiff's principal contention on appeal is that the evidence adduced at trial shows the existence of a common law dedication of High Lake Park, thereby creating a perpetual easement in the public under *Woodward v. Schultz* (1959), 15 Ill.2d 476, 155 N.E.2d 568, and that the tax deed issued to L. Paul was, therefore, void. In our view, the record in this case demonstrates neither the existence of a common law dedication of High Lake Park nor any factor which could lead to voiding the tax deed issued to L. Paul. We, accordingly, reverse.

In *Woodward v. Schultz*, plaintiffs sought to enjoin the filing of a plat resubdividing a 5-acre tract to a park district to be used as a public park. The supreme court reversed an order dismissing the complaint because it found the existence of a common law dedication of the tract based upon the owner's intention to dedicate the tract to a public use and the acceptance thereof by the public. The court also noted that, whereas statutory dedication involves title, common law dedication has no effect upon the title to property but merely grants an easement in the property to the public.

■■ In the case at bar, we first note that the intention of the owner

of High Lake Park to dedicate the tract to the public is not, as was the case in *Woodward*, "uncontroverted." Here, the statement authorized by an officer of the Chicago Title and Trust Company in 1927, offered to convey title to the tract to a park or village entity to be used "* * * as a public park for the use of residents and owners of lots in High Lake." Since the intention was to convey the property for the use of the residents and owners of lots in High Lake, and not for the use of the public generally, we fail to find the existence of an intent to dedicate to the public (*People ex rel. Scott v. Ricketts* (1911), 248 Ill. 428, 94 N.E. 71), and accordingly do not find the existence of a common law dedication of the subject property.

Secondly, and more importantly, we note that the action in *Woodward* sought to gain an easement to the property to the public as against the original developer of the property or those in privity with him. In the case at bar, plaintiffs seek to impose the burden of an easement upon parties who have taken merchantable title through a tax deed proceeding adverse to the interests of the original owner and without knowledge of the alleged easement, as will be developed below.

With *Woodward v. Schultz* thus distinguished, we turn next to a consideration of whether the trial court erred in declaring the tax deed proceedings null and void. Section 266 of the Revenue Act of 1939, as amended, provides in relevant part as follows:

"* * * Tax deeds issued pursuant to this Section are incontestable except by appeal from the order of the court directing the county clerk to issue the tax deed. However, relief from such order may be had under Section 72 of the 'Civil Practice Act' * * * in the same manner, upon the same grounds and to the same extent as may be had under that Section with respect to final orders, judgments and decrees in other proceedings. This Section shall be liberally construed so that tax deeds herein provided for shall convey merchantable title." (Ill. Rev. Stat. 1971, ch. 120, par. 747.)

Although plaintiffs' amended complaint was not a "petition filed in the same proceeding" in which the order directing the issuance of the tax deed was entered as required by section 72, we will consider plaintiffs' amended complaint to be, in effect, a section 72 petition seeking to collaterally attack the tax deed. It may be noted at this point that any petition to vacate an order, judgment or decree, filed more than 30 days after the entry thereof and made to the court that rendered it is a collateral attack. (See *Cherin v. R. & C. Co.* (1957), 11 Ill.2d 447, 143 N.E. 2d 235.) Relief under section 72 is available upon proof of fraud (*Zeve v. Levy* (1967), 37 Ill.2d 404, 226 N.E.2d 620), and the petition must be

filed "not later than two years after the entry of the order, judgment or decree" unless that order or judgment is void.

■■ We find that the order directing the issuance of a tax deed to L. Paul was not void and, therefore, plaintiffs' petition seeking to set aside the tax deed comes too late. In *Shapiro v. Hruby* (1961), 21 Ill.2d 353 358, 172 N.E.2d 775, 778, the supreme court noted the following:

> "By its enactment of section 266 of the Revenue Act (Ill. Rev. Stat. 1959, Chap. 120, par. 747,) the legislature intended to render tax titles incontestible except by direct attack, unless the circumstances are such as to warrant the application of section 72 of the Civil Practice Act, (Ill. Rev. Stat. 1959, chap. 110, par. 72,) or unless the order directing the issuance of deed was utterly void. (*Southmoor Bank and Trust Co. v. Willis*, 15 Ill.2d 388; *Cherin v. The R. & C. Co.*, 11 Ill.2d 447.) The county court had jurisdiction of the land in question by publication in the county collector's application for judgment and sale of delinquent lands, and this jurisdiction was retained not only for the issuance of a tax deed but also to consider whether all statutory requirements therefor had been met, including the absence of the valid redemption."

(See also *Exline v. Weldon* (1974), 57 Ill.2d 105, 311 N.E.2d 102.) In this case, plaintiffs argue that the proceedings for tax deed were void due to the existence of a common law dedication. While we do not find a common law dedication of the property in question, we find that *even if* a common law dedication could be said to exist, it would not render the order directing the issuance of the tax deed void. The court directing the issuance of the tax deed acquired jurisdiction of the property in question by publication in the county collector's application for judgment and sale of delinquent lands and retained jurisdiction to enter the order for the issuance of a deed. Since the order was not void, plaintiffs' petition seeking to void the tax deed more than two years after its entry comes too late.

■■ While the above is sufficient to support a reversal of the decree appealed from, we additionally note that defendants, as bona fide purchasers for value of the subject property, are protected in title by section 72(5) of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 72(5)). Under this section, unless lack of jurisdiction affirmatively appears from the record proper, the vacation or modification of an order, judgment or decree pursuant to section 72 will not affect the right, title or interest in or to any property of any person not a party to the original action acquired for value after the entry of the order, judgment or decree but before the filing of the petition. (*Southmoor Bank & Trust Co. v. Willis* (1958), 15 Ill.2d 388, 393, 155 N.E.2d 308, 311.) Among their affirma-

tive defenses, defendants pleaded payment of $23,500 for the property and the protection of section 72(5). Plaintiffs not only failed to deny the facts upon which this affirmative defense was based, but affirmatively admitted them at the beginning of the trial as noted above. Plaintiffs did not plead nor tender evidence of any kind that defendants had notice of the rights claimed by plaintiffs. Furthermore, in the absence of any facts to the contrary, there is a presumption that a purchaser has purchased for value and in good faith. (*Warford v. McQueen* (1940), 375 Ill. 372, 377, 31 N.E.2d 599, 602.) We therefore find that the defendant State Bank of West Chicago as trustee was a bona fide purchaser for value of the subject property (as were the Blasens), and in view of the absence of any jurisdictional defects, is protected in title from the section 72 relief sought by plaintiffs.

The order of the circuit court is hereby reversed.

*Judgment reversed.*

SEIDENFELD, P. J., and HALLETT, J., concur.