*In re* APPLICATION OF COUNTY COLLECTOR.—(BEN MUSIKANTOW, Petitioner-Appellee, *v.* THE VILLAGE OF SOUTH HOLLAND, Objector-Appellant—(THE VILLAGE OF SOUTH HOLLAND, Plaintiff-Appellant, *v.* BERNARD J. KORZEN, County Treasurer and Ex-Officio County Collector of Cook County, *et al.*, Defendants-Appellees).)

First District (1st Division)   No. 62065

Opinion filed November 29, 1976.

Jacobs, Buikema & Malak and William O. Krohn, both of Chicago, for appellant.

Shannon & Buyer, Chartered, of Chicago (Bruce M. Buyer and Richard D. Glickman, of counsel), for appellees.

Mr. JUSTICE SIMON delivered the opinion of the court:

This appeal involves a contest over the ownership of land in South Holland. The land in question has a depth of approximately 75 feet and a length of approximately 800 feet, lies along the south bank of the Little Calumet River and is bounded on the south by Riverview Drive which follows a gently curving course in an east-west direction about 75 feet south of the river. In the plat of The First Addition to Pacesetter Park, Harry J. Quinn Memorial Subdivision (herein referred to as "The First Addition") recorded on September 10, 1957, this land is designated as Outlot A (and will be referred to in this opinion as "Outlot A").

The Village of South Holland claims there was a common law dedication of Outlot A to it for public use in 1957 by the subdivider and developer of The First Addition as a result of which it was exempt from taxation. However, the assessor did not remove Outlot A from his rolls as exempt property until 1972, and real estate taxes levied against the property for the years 1961 through 1970 were unpaid. Ben Musikantow asserts ownership as purchaser of Outlot A at a scavenger sale held in 1972 of the delinquent, unpaid taxes for the years 1961 through 1970. He bid and paid $1,503 for these taxes, and in addition paid the 1971 taxes in the amount of $145.29. No redemption occurred and Musikantow petitioned for a tax deed.

The dispute over Outlot A was initiated by Musikantow's petition for a tax deed and the Village's objections which were accompanied by a complaint filed by the Village to enjoin the imposition and collection of taxes for the years in question and to exempt the property from taxation. The Village's complaint was consolidated with Musikantow's petition. The circuit court dismissed the Village's complaint, overruled its objections and directed issuance of the tax deed. The Village concedes that a statutory dedication of Outlot A was not accomplished because neither the recorded plat of The First Addition nor any other document recorded prior to the Village's complaint recited that Outlot A was dedicated for public purposes. (Ill. Rev. Stat. 1971, ch. 109, par. 1.) The Village appeals, however, contending that there was a common law dedication to the Village, and that this was sufficient to exempt Outlot A from taxation.

The First Addition is part of a series of at least five contiguous subdivisions, commonly referred to as Pacesetter Park, running from west to east, each of which, like The First Addition, borders upon and lies to the south of the Little Calumet River. Each of the subdivisions was developed over a period of years commencing in 1956 by the same developer. In each of the subdivisions, except The First Addition, the land between the river and Riverview Drive, the first street south of the river, was formally dedicated for a public park by the recorded plat of the subdivision. The dedicated parcels correspond in their location in the subdivisions of which they are a part to Outlot A in The First Addition. Thus, the area bordering the Little Calumet River and lying to the north of Riverview Drive in the Pacesetter Park subdivisions to the east and west of Outlot A has been dedicated as a public park by the subdivider. The Village's position is that through oversight the recorded plat of The First Addition failed to show the dedication of Outlot A for a public park, but that the evidence demonstrates a common law dedication.

The president of a corporation which was the developer and subdivider, testified a preliminary plat of The First Addition was prepared at his direction and that it showed a parcel of land between the river and Riverview Drive set aside for a public park. Neither he nor his company exercised any ownership over Outlot A after 1957 and he knew of no one except the Village exercising ownership over it. He frequently saw children playing on Outlot A, as well as people playing baseball and basketball and ice skating there. The preliminary plat the corporation's president referred to was submitted to and approved by the Village Board in 1957 by formal action as well as by the Village Plan Commission. It showed that a parcel of land in the area designated as Outlot A on the recorded plat was to be dedicated for public purposes. It also contained a notation that a parcel along the south bank of the river plus an additional area to be set aside for school use were to be dedicated for public use to satisfy the Village's requirement that 7% of a proposed subdivision within the Village be dedicated for public use. Outlot A on the recorded plat of subdivision had no public streets running through it, and there was no division of Outlot A into individually-numbered residential lots as was the case of the remainder of the subdivision. This was consistent, of course, with an intent to dedicate Outlot A as part of a plan to dedicate for public use as a park the area of land running the entire length of the subdivisions between the Calumet River and Riverview Drive.

Village Trustee Vinke, who served as a trustee for 23½ years and as chairman of the Park Committee of the Village Board for that entire time which included the period Pacesetter Park was being developed, was a witness for the Village. His testimony was particularly helpful in determining the intent of the Village and subdivider with respect to the use of Outlot A and the manner in which the Village treated it after 1957.

He testified that the Village required the developer to dedicate the land shown on the recorded plat as Outlot A as a condition of approval of the subdivision known as The First Addition. The land required to be dedicated in The First Addition was to be immediately adjacent to and a continuation of a park along the river provided for in the previous dedication of land in the adjoining subdivision. After the subdivision was approved, Trustee Vinke stated the Village filled in Outlot A to bring it up to grade, planted grass and trees, constructed a shelter and installed basketball backboards and equipment. The Village, with funds contributed by the local residents, fenced in the entire river frontage. The Village has exercised complete control over the maintenance and development of Outlot A since 1956 including enactment of an ordinance granting an easement to the Metropolitan Sanitary District of Greater Chicago along and across Outlot A for construction and maintenance of an intercepting sewer.

The record is silent as to who received the tax bills between 1957 and 1970.

■■■ Common law dedication requires an intention on the part of the owner to dedicate his land for public use, together with acceptance by a public body. (*Woodward v. Schultz* (1959), 15 Ill. 2d 476, 483, 155 N.E.2d 568; *City of Greenville v. File* (1970), 130 Ill. App. 2d 878, 881, 265 N.E.2d 518.) Intention to dedicate may be shown by oral statements or by any means which establish the intent of the land owner. (*Woodward v. Schultz* (1959), 15 Ill. 2d 476, 483, 155 N.E.2d 568.) A grant in writing is not necessary. (*Smith v. Town of Flora* (1872), 64 Ill. 93, 95.) Acceptance may be inferred from acts of the public body such as improving, lighting or otherwise assuming control over the property in question or from public use consistent with the purposes for which it was dedicated. *Alden Coal Co. v. Challis* (1902), 200 Ill. 222, 229, 65 N.E. 665.

Musikantow argues that because the adjoining properties in the subdivisions to the east and west of Outlot A are clearly dedicated for public park use and since Outlot A lacked such designation, there was no intention to dedicate it. On the contrary, the fact that the adjacent parcels in the adjoining subdivisions were so marked strongly indicates an intent by the developer and the Village that the area between the south bank of the river and Riverside Drive in all of the subdivisions would be one continuous public park. The record clearly establishes the intention of the subdivision developer to dedicate Outlot A to the Village for park use, and the finding to the contrary by the circuit judge was against the manifest weight of the evidence and must be set aside.

■■ The graded, grassy terrain filled in, planted and developed by the Village on Outlot A as a continuation of the terrain on the dedicated parcels to the east and west of it is evidence of the Village's acceptance of

the dedication of Outlot A. This acceptance is documented by evidence that the Village demanded the dedication of Outlot A as a condition of approving the subdivision of The First Addition. Acceptance is also established by evidence of the Village's exercise of possession over and its maintenance and improvement of Outlot A as well as its use by the public as a park. Thus, the finding by the circuit judge that Outlot A was not accepted by the Village on behalf of the public was also against the manifest weight of the evidence and must be set aside.

Musikantow, in urging a common law dedication did not occur, relies on *People v. City of Toulon* (1921), 300 Ill. 408, 133 N.E. 707, and *Large v. Lyons* (1975), 31 Ill. App. 3d 1076, 335 N.E.2d 524, both of which are distinguishable. The intent of the owners in the former case was to defer dedication until certain indebtedness for the purchase of the property and its improvement had been paid through private subscription of funds and to make additional improvements to a park being planned by private citizens before turning it over to the city. The owners, therefore, never reached the point at which they intended to dedicate the land nor where the Village accepted such dedication. The court concluded in *Large v. Lyons* that there was no intent to dedicate land as a park for the use of the public generally, but rather only for a use restricted to the residents and owners of property in a certain subdivision. This was not a sufficient basis for a common law dedication. Moreover, in that case there was no public body which had authority over the land and to which it was claimed a common law dedication had been made.

■■ Although the evidence establishes that a common law dedication of Outlot A took place, it must be determined whether this type of dedication brings Outlot A within the exemption from taxation provided for by the Revenue Act (Ill. Rev. Stat. 1971, ch. 120, pars. 500.6 and 500.9). Sections 19.6 and 19.9 of the Revenue Act of 1939 qualify property for exemption from real estate taxation provided it is "owned" by a city or village and used exclusively for public purposes. (Ill. Rev. Stat. 1971, ch. 120, pars. 500.6 and 500.9.) The crux of the controversy in applying these statutes to a common law dedication revolves around the meaning of the word "owned." A common law dedication creates a perpetual easement on behalf of the public and such an easement is a freehold estate. (*Woodward v. Schultz* (1959), 15 Ill. 2d 476, 478, 155 N.E.2d 568.) A freehold estate is one of indeterminable duration, but it is not the equivalent of fee simple title. The word "owned" as used in the Revenue Act is not, however, limited to property owned by public bodies in fee simple.

The court observed in *Coombs v. People* (1902), 198 Ill. 586, 588, 64 N.E. 1056, that the word "owner" as applied to land "has no fixed meaning which can be declared to be applicable under all circumstances

and as to any and every enactment." And, in *Woodward Governor Co. v. City of Loves Park* (1948), 335 Ill. App. 528, 82 N.E.2d 387, the court expressed the view that there "is no uniform guide as to what meaning shall be ascribed to the term 'owner' and that consideration must be given to the nature and purpose of the statute" in which the word is used, "the object that it seeks to accomplish" and "all the surrounding circumstances." (See also *Nicholson v. Village of Schaumburg* (1961), 33 Ill. App. 2d 197, 178 N.E.2d 680.) In *Woodward Governor Co.* the court noted several cases characterizing an easement giving a railroad exclusive use and possession for railroad purposes as the equivalent of ownership as well as cases holding that a railway having a right of way only was subject to special assessment as an "owner" of abutting property. The court then concluded that an easement possessed by a railroad conferred the status of an owner for the purpose of joining in a disconnection petition.

■■ The purpose and object of the exemption provisions of the Revenue Act are to free property controlled and used by public bodies for public use from the burden of taxation. While this may not apply to interests which are transient or trivial, the word "owned" as used in the Revenue Act, in order to give effect to the intent of the statute, must include interests which are exclusively devoted to public use and are of substantial duration and extent. An easement which is of indeterminate duration qualifies for this exemption. It would be inconsistent with the purpose of the exemption provision to permit the tax collector's grasp to extend to a municipal park devoted to public use in perpetuity.

While the Village did not have fee simple title, such an ownership interest would have been useless to anyone else in view of the common law dedication, except for the remote possibility that the Village might abandon the park and cause Outlot A to revert to the fee owner. The Village's lack of fee simple title should not, therefore, disqualify it as an owner. For practical purposes, the possession and control the Village has over the land as a result of the perpetual easement is not unlike that an owner of fee simple title would have. It is a sufficient attribute of ownership to qualify the Village as an "owner" within the meaning of the Revenue Act, and as such exempt Outlot A from real estate taxation.

The decree below is therefore reversed, the objections of the Village to the petition for tax deed are sustained, the petition for tax deed is dismissed and the cause is remanded for such further proceedings as may be appropriate and not inconsistent with this opinion.

*Reversed and remanded.*

GOLDBERG, P. J., and BURKE, J., concur.