CHICAGO PATROLMEN'S ASSOCIATION *et al.*, Plaintiffs-Appellees, v. THE DEPARTMENT OF REVENUE, Defendant-Appellant.

First District (6th Division)   No. 1—92—3153

Opinion filed December 30, 1994.

RAKOWSKI, J., dissenting.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Kimberly W. White, Assistant Attorney General, of counsel), for appellant.

Patrick C. Turner, of Law Offices of Victor J. Cacciatore, of Chicago, for appellees.

PRESIDING JUSTICE EGAN delivered the opinion of the court:

This is a tax case involving interpretation of that part of the Illinois Revenue Code dealing with charitable exemptions of property. The defendant Department of Revenue (Department) takes the position that property is not exempt from taxation unless it is owned entirely by a charitable institution. The trial judge disagreed with the Department; and so do we in this case.

On May 3, 1987, the plaintiffs, Chicago Patrolmen's Association (CPA) and the American Police Center and Museum (Museum), became the beneficial owners in a land trust of four parcels of land located at 1705-25 South State Street, in Chicago. Each of the plaintiffs retained a 50% undivided interest in the parcels. Each of three parcels contained a two-story brick building and the fourth parcel contained a one-story building with an adjacent parking lot.

After the plaintiffs acquired the property they spent the rest of the year renovating and remodeling the buildings to prepare them for the Museum's opening in June of 1988. The northernmost building, one of the two-story buildings, was not used by the CPA and Museum while the other buildings were undergoing renovation.

The plaintiffs applied for exemptions for the 1987 tax year alleging that the property was exempt under section 19.7 of the Illinois Revenue Act of 1939. (Ill. Rev. Stat. 1987, ch. 120, par. 500.7.) On June 22, 1988, the Department's Board of Appeals recommended that the plaintiffs be given a partial year exemption from May 8, 1987, to December 31, 1987. The Department's Director rejected the Board's recommendation and denied the exemption. The plaintiffs requested a formal hearing on the denial of the exemption. A hearing was held before an administrative law judge, who recommended that the exemption request be denied. The Department's Director approved the recommendation of the administrative law judge.

The plaintiffs filed a complaint in administrative review in the circuit court. On September 24, 1991, the trial judge entered an order remanding the case to the Department. The judge found, as a matter of law, that whether the CPA was a charitable organization was irrelevant under the Act; that the CPA's ownership interest in the property was irrelevant under the Act; and that the plaintiffs' use of the property was material. Based on those findings, the judge remanded the matter to the Department for a determination of whether the Museum's use was the primary use of the property. If the Department found the Museum's use to be primary, the Department was to then make a further determination of whether the property was to be granted a full or partial exemption.

After remand, on February 11, 1992, the Department issued its order in which it determined that all the parcels of land were used by the Museum for charitable purposes for 66% of the calendar year 1987, except for the northernmost 5,500-square-foot building, which the Department concluded remained vacant, and 160 square feet of office space used by the CPA in another building. The Department stated that the CPA was not a charitable organization.

The trial judge entered his final order on August 14, 1992. He ruled that the property which included the 5,500-square-foot building was not entitled to a charitable tax exemption; that two of the parcels were entitled to a total exemption as of May 6, 1987; and the fourth parcel, which contained 160 square feet of office space used by the CPA, was entitled to a 98% tax exemption as of May 6, 1987. The Department appeals, contending that there may be no exemption because the Museum, which the Department concedes was a charitable organization, did not own all of the property. The plaintiffs do not appeal from the order denying an exemption to the vacant building.

Although the Department does not deny that the Museum was a charitable organization, we deem it appropriate to set forth the evidence. Joseph Pecoraro was the president of the CPA and the chairman of the Museum. Before the CPA and the Museum acquired the subject property, they owned a five-story building in 1972. That building had previously been exempted from real estate taxation.

The Museum contains artifacts and exhibits about police officers, as well as information about their training and how they function. It is open to the general public, and although there is no admission charge, the Museum has a donation box at the door. Approximately 20,000 children tour the Museum during the year, and most of its activities are directed toward children. Many of the Museum exhibits and programs are designed to alert children to the dangers of drug

abuse, to instruct them on street awareness and to promote better relationships between young people and the police. Since 1974, the Museum had received a Federal tax exemption pursuant to section 501(c)(3) of the Internal Revenue Code, 26 U.S.C.A. § 501(c)(3) (West 1992).

The space occupied by the CPA was used for the CPA's credit union and for its monthly board meetings. The CPA was formed in 1916, and its purpose, according to Pecoraro, was to "champion, the cause of the policeman, the patrolman working for the City of Chicago." He would go to Springfield and "act as a union" and try to encourage legislation "to make the policeman's job easier." The CPA collects dues and provides death benefits for its members. It also makes its facilities available upon request to other civic and charitable groups. The groups are allowed to use the CPA's facilities free of charge. The CPA is a not-for-profit corporation.

■ Section 19.7 of the Illinois Revenue Act of 1939 (Ill. Rev. Stat. 1987, ch. 120, par. 500.7) provides in part that the following property shall be exempt from taxation:

> "All property of institutions of public charity, all property of beneficent and charitable organizations, *** when such property is actually and exclusively used for such charitable or beneficent purposes, and not leased or otherwise used with a view to profit."

The Department concedes that the 98% charitable use of the property by the Museum meets the requirement of the Act that the Museum "actually and exclusively used" the property for charitable purposes. (See *Resurrection Lutheran Church v. Department of Revenue* (1991), 212 Ill. App. 3d 964, 571 N.E.2d 989.) It is the Department's position, however, that no less than 100% of ownership by the Museum would satisfy the statute.

Many cases have been cited to us involving ownership interest other than fee simple. (See, *e.g., People ex rel. Bracher v. Salvation Army* (1922), 305 Ill. 545, 137 N.E. 430 (contract purchaser of property possesses sufficient ownership for exemption); *People v. Chicago Title & Trust Co.* (1979), 75 Ill. 2d 479, 389 N.E.2d 540 (beneficiary of land trust possesses sufficient ownership interest for exemption); *In re Application of County Collector* (1976), 44 Ill. App. 3d 327, 357 N.E.2d 1302 (village holder of an easement considered an "owner" entitled to a public property exemption).) The statute itself recognizes that a lessee may be considered an owner for exemption purposes. But no case has been cited by the parties, nor has our research disclosed one, involving ownership by more than one entity.

The last case cited by the Department, upon which it relies heavily, is *Victory Christian Church v. Department of Revenue* (1994),

264 Ill. App. 3d 919, 637 N.E.2d 463. In that case, the owner of the property leased the property to a religious order for almost $100,000 per year. The court said that the issue to be decided was whether an owner who uses real estate for profit, but leases it exclusively for religious and school purposes, is entitled to a real estate tax exemption. The appellate court held that it was not entitled to an exemption.

Factually, *Victory Church* is inapplicable in this case. In this case there not only is no lease, there is no profit. The CPA is a not-for-profit organization, and it permits the Museum, which has a 50% interest, to use 98% of the property. The CPA gets nothing for the additional 48% use by the Museum. It is inescapable to us that if the owner of the property had leased the property to Victory Church for a token amount, the result of the case would have been different. Consequently, if the CPA owned all the property and leased it to the Museum for a token amount, the property would be exempt. We fail to see why the law requires a different result where the charitable organization has a greater interest than a lease through its ownership of 50% of the property and the CPA allows the charitable organization to use 48% of the property without any charge. We refuse to believe that the legislature intended in this case the unfair and rigid interpretation of the Revenue Act advanced by the Department.

Although the parties have not argued the facts extensively, we cannot disregard the relationship between the Museum and the CPA. Pecoraro is president of the CPA and chairman of the Museum. The purpose of the Museum is to assist law enforcement and to promote better relations between young people and the police. The CPA also makes its facilities available upon request to other civic and charitable groups. While the CPA may not meet all the requirements that would make it a "charitable" organization, it cannot be denied it does some public good. Each case must be decided on its own facts, and we believe the facts of this case justify the imposition of an exemption on 98% of the property owned by the plaintiffs.

For these reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

McNAMARA, J., concurs.

JUSTICE RAKOWSKI, dissenting:

All property is subject to taxation unless specifically exempted by statute. (*Rogers Park Post No. 108 v. Brenza* (1956), 8 Ill. 2d 286, 289-90, 134 N.E.2d 292.) In determining whether a use is included within

the scope of an exemption, all debatable questions are to be resolved in favor of taxation. (*Board of Certified Safety Professionals of the Americas, Inc. v. Johnson* (1986), 112 Ill. 2d 542, 547, 494 N.E.2d 485.) Every presumption is against the intention of the legislature to exempt a use from taxation. (*United Air Lines, Inc. v. Johnson* (1981), 84 Ill. 2d 446, 456, 419 N.E.2d 899.) The person claiming the exemption has the burden of proving "clearly and conclusively" that he is entitled to the exemption. (*People ex rel. County Collector v. Hopedale Medical Foundation* (1970), 46 Ill. 2d 450, 462, 264 N.E.2d 4.) "In applying the law to the facts, the court must be mindful that taxation is the rule. Tax exemption is the exception. Article IX, section 6 (Ill. Const. 1970, art. IX, § 6), and any statutes enacted under its provisions must be resolved in favor of taxation." (*Chicago Bar Association v. Department of Revenue* (1994), 163 Ill. 2d 290, 301.) It is with this strict standard that the intent of the legislature must be determined.

In pertinent part, section 19.7 of the Illinois Revenue Act (Ill. Rev. Stat. 1987, ch. 120, par. 500.7) provides:

> "All property *of* [charitable organizations] *** when such property is actually and exclusively *used* for such charitable or beneficent proposes, shall be entitled to an exemption." (Emphasis added.)

The statute clearly sets forth a two-prong requirement for exemption entitlement. The property must be owned by a charitable organization *and* exclusively used for charitable purposes. (*Pontiac Lodge No. 294 v. Department of Revenue* (1993), 243 Ill. App. 3d 186, 190, 611 N.E.2d 62.) In accord, the court in *Christian Action Ministry v. Department of Local Government Affairs*, citing *Hoffman v. Lehnhausen* (1971), 48 Ill. 2d 323, 326, 269 N.E.2d 465, and *Coyne Electrical School v. Paschen* (1957), 12 Ill. 2d 387, 397, 146 N.E.2d 73, stated that "charitable use and ownership by a charitable organization are the requirements for a charitable tax exemption on property." *Christian Action Ministry v. Department of Local Government Affairs* (1978), 74 Ill. 2d 51, 61, 383 N.E.2d 958.

As the Museum's use of 98% of the property is for charitable purposes, the second prong of the test has been clearly satisfied. I respectfully submit, however, that because the Museum's ownership of the property is only partial, it has not met the first-prong ownership requirement.

It is clear that the CPA is not a charitable organization and that it owns an undivided 50% beneficial interest in trust. Keeping in mind the strict standard to be applied, I fail to understand how the subject property can be said to be "of" or owned by a charitable orga-

nization. I could understand a 49% exemption. At least that would be logically consistent with the statute (although I question whether section 19.7 would authorize such an apportionment). A 98% exemption, however, is neither logical nor in accord with the strict statutory requirement.

The majority opinion admits that there is not any authority for the proposition that property which is partially owned by a noncharitable organization is entitled to an exemption. However, the majority reasons that if the CPA owned all of the property and leased it without charge to the Museum, the property would be exempt. Although not cited by the majority, there is authority for such a proposition. In an analysis of what constitutes ownership for purposes of section 19.7, we have held:

> "Title refers only to a legal relationship, while ownership is comparable to control. [Citation.] The term 'owner' may include one who has the control or occupation of land with a claim of ownership." (*Wheaton College v. Department of Revenue* (1987), 155 Ill. App. 3d 945, 947, 508 N.E.2d 1136.)

Accordingly, if there was a lease in the case *sub judice*, the noncharity CPA would transfer many of its rights to the Museum. The charitable organization (Museum) would then possess 100% of the control and occupation of the property. If this was the case, an exemption may be proper. However, in the case *sub judice*, there is not any lease at all let alone one that would qualify the Museum as an owner of the property. Nor is it proper to assume such a lease. Under the majority's interpretation, the CPA receives the benefit of an exemption yet it does not relinquish any right to control. I submit that the legislature could not have intended such a result.

In sum, I agree with the majority that forms of ownership other than fee simple (contract purchaser, beneficiary of a land trust, holder of an easement and under certain circumstances, a lessee) are sufficient to constitute ownership. I also agree that if there was a lease giving the Museum a sufficient amount of control to qualify it as an owner, the property could very well be entitled to an exemption. I cannot agree, however, that a 50% beneficial interest holder possesses the amount of control necessary to constitute ownership for purposes of section 19.7. Although the majority refers to the Department's interpretation as unfair and rigid, I believe it to be in accord with the aforementioned strict statutory standard.

For all of the aforementioned reasons, I would reverse the order of the circuit court and reinstate the February 26, 1990, decision of the Department of Revenue which denied the exemption.